UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA<br>ex rel. MICHAEL L. DAVIS, | )<br>)<br>)<br>) |  |
| Plaintiffs, | )<br>) | Case Number: 06-629 (JDB) |
| v. | )<br>) |  |
| THE DISTRICT OF COLUMBIA, et al., | )<br>) |  |
| Defendants. | )<br>) |  |

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS

Relator Michael L. Davis (hereinafter referred to as "Mr. Davis" or "Relator"), through his counsel, hereby opposes the District Defendants' (the District of Columbia and the District of Columbia Public School's) Motion to Dismiss.  Respectfully, we contend that the District Defendants have presented no legally justifiable reason to preclude adjudication of Mr. Davis' assertions under the False Claims Act.  As grounds in support of his opposition states the following:

**Procedural History**

On April 5, 2006, Mr. Davis filed an action under the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.,* in order to recover damages and civil penalties from the District of Columbia (the "District") and the District of Columbia Public Schools ("DCPS") for the knowing submission of false payment claims to United States Government under the DCPS' Medicaid Reimbursement Recovery Program for the District of Columbia Public Schools Special Education Program.  The following day, on April 6, 2006, the United

States was served with the Complaint and disclosure of material information required by 31 U.S.C. § 3730(b)(2).[1]

On October 26, 2007, pursuant to 31 U.S.C. § 3740(b)(4)(B), the United States notified the court of its election to decline intervention.[2]  On November 1, 2007, this Court ordered (among other things) that the case be unsealed and the named party defendants be served with process.  On January 22, 2008, the District Defendants were served with the Summons, the Complaint and Relator's Disclosure Statement averring to the facts in the Complaint.

On January 29, 2008, the District filed a request for a 60-day enlargement of time in which to respond to the Complaint arguing that they will "require significant time and resources to investigate and prepare a thorough response to the Complaint."[3]

---

[1]     Under the False Claims Act (FCA), a complaint is filed under seal and remains under seal for a period of at least sixty (60) days, and shall not be served on the defendants until the Court so orders.  The United States may intervene and prosecute the action within sixty (60) days after it receives the Complaint and supporting evidence and information, or it may permit the Relator to prosecute the action in the name of the Government.  As required by FCA § 3730(b)(2), Mr. Davis provided to the Attorney General of the United States and the United States Attorney for the District of Columbia a statement of material evidence and information in his possession before filing the instant Complaint.

[2]     Notwithstanding its' declination of intervention, the United States reserved the right to be notified through the United States Attorney General if the court or Defendants proposed that this action be dismissed.  31 U.S.C. § 3740(b)(1).

[3]     We note that notwithstanding the sixty day period the court granted the District Defendants to investigate and prepare a thorough response, there is not a single fact that directly challenges the Relator's averments in the FCA Complaint.  Distillation of Relator's claims reveals that this is very simply a case of misappropriation which can be readily ascertained by review of specific District of Columbia financial records and interviews of a discrete number of individuals.  In his Complaint, Relator specifically identifies a discrete number of individuals at a specific point in time who were involved and have knowledge of the fact that Medicaid funds were drawn down without supporting documentation.

On April 4, 2008, the District Defendants filed their Motion to Dismiss arguing principally that the Relator failed to support its claim with firsthand, direct and independent knowledge of sufficient facts; failed to provide information upon which the complaint is based to the government before filing its action; and failed to allege fraud with specificity.

Respectfully, we disagree with each of the Districts' assertions which amount to nothing more than weak attempts to avoid the ultimate issue: that there has been a misappropriation of Medicaid funds through the knowing acceptance and transmission of a Medicaid claim for reimbursement without proper documentation, and a conspiracy to create false documents to support certain specific Medicaid claims.

## ARGUMENT

The False Claims Act ("FCA") prohibits the court from exercising subject matter jurisdiction over an action based on the publicly disclosed allegations *unless* the person bringing the action is an original source of the information. The District erroneously asserts that this prohibition requires that court to dismiss this action. Here, dismissal for lack of subject matter jurisdiction is inappropriate because the information underlying the FCA complaint was *not* publicly disclosed at the time the complaint was filed—even if it had been, Davis is unquestionably the original source of the information.

When considering a motion to dismiss,[4] a court should not grant the motion unless the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. The court assumes that the facts alleged by the plaintiff are true, and gives the

---

[4] The District Defendants base their Motion to Dismiss on Fed.R.Civ.P. 12(b)(6)(1) & 12(b)(6).

plaintiff the benefit of all inferences that can be derived from the facts as alleged. *United States v. Bouchey*, 860 F. Supp. 890, 893 (D.D.C. 1994).

Davis contends that the Complaint and accompanying personal disclosure statement allege facts sufficient to allow the court to reasonably infer that the District knowingly: (1) accepted a cost report from Maximus with the knowledge that Maximus had not documented the District's claim; (2) recorded the false claim as a legitimate one; (3) used its authority to draw down funds from the Medicaid account to pay for an undocumented DCPS cost report; and (4) covered up its preparation, submission, review, payment, reimbursement and/or credit of fraudulent DCPS Medicaid claims. In light of the particularity of the pleadings in the FCA complaint, dismissal pursuant to Rule 12 (b)(6) is not warranted.

**I.     This Court has Subject Matter Jurisdiction Over this Action Pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3730.**

The FCA does not allow the court subject matter jurisdiction "over an action under [31 U.S.C. § 3730] based upon the public disclosure of allegations . . . unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730 (e)(4)(A). There are two distinct steps to the FCA subject matter jurisdiction analysis. Step one is the "public disclosure" test, where the court determines if the relator's suit is based on information publicly disclosed in a hearing, investigation, or in the media. If the answer is yes, the court moves on to step two.

Step two is the "original source" test, where the court must decide if the relator has direct and independent knowledge of the information on which the allegations are based. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 304 U.S. App. D.C.

[4]

347, 14 F.3d 645, 651 (D.C. Cir. 1994).  There is no need here to move beyond the first step, because the information underlying Davis' allegations were not publicly disclosed in a hearing, investigation, or in the media at the time he filed this FCA Complaint.

### A. The information underlying Davis's *qui tam* complaint was not publicly disclosed until after the *qui tam* compliant was filed.

The court's subject matter jurisdiction over an action depends on the state of things at the time the action is brought.  *Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1409 (2007).  The FCA bars jurisdiction over complaints "based on" information already disclosed to the public.  Davis filed the FCA action on April 4, 2006 and subsequently on May 24, 2006, filed a discrimination complaint based on the District's failure to pay him for work he had performed pursuant to a contract. The District seems to misunderstand the timeline of this case when it claims that Davis filed a discrimination complaint "over one month prior to the FCA complaint" and that the allegations in the FCA complaint were "already in the public domain."  (Mem. 14-15).[5]  It is impossible for the FCA action to be "based on" publicly disclosed information if the information was publicly disclosed *after* the FCA action was filed.

The jurisdictional bar in 31 U.S.C. § 3740(e)(4)(A) only prohibits actions based on publicly disclosed information when either the *allegations* of fraud have been made public or the *essential elements* of fraud have been made public.  *Springfield Terminal* at 654. The District claims that the Joint Statement of the Case from Davis's discrimination action publicly discloses the information on which his FCA complaint is based.  In this Statement, Davis discloses that his company identified over $68 million due to the

---

[5] "Mem." refers to the District's Memorandum of Points and Authorities in Support of District Defendants' Motion to Dismiss.

[5]

District of Columbia from uncollected Medicaid programs. He also asserts that the District Chief Financial Officer has the responsibility for paying contractors and submitting claims to the federal government. He then points out that the District refused to pay him for work he performed pursuant to a contract. (Mem. Exhibit A at 2).

The Statement does not allege fraud, nor do his allegations indicate the essential elements of fraud: the fact that the District had not collected certain Medicaid funds and that it had not paid one of its contractors would not put the United States government on notice that the District had made a false claim. Public knowledge of a misrepresented state of affairs, without any public knowledge, allegation or evidence of the *fact* of misrepresentation, does not bar a subsequent FCA claim based on the publicly disclosed information. *Springfield Terminal* at 656.

The fraudulent activity described in the FCA complaint—the submission of Medicaid claims without documentation and the payment of funds into the general treasury—are entirely absent from the joint statement. Since the information in the joint statement does not allege fraud or describe the necessary elements of fraud, it is not a public disclosure sufficient to deprive the court of jurisdiction over Davis's FCA action. *Springfield Terminal* at 654-655. Even if it were possible for a would-be relator to look into his crystal ball and base an FCA action on information disclosed in the future, he would not have been able to find the basis for a fraud action in the Joint Statement, as the District erroneously asserts.

     **B.**    **Davis was the original source of the information underlying his complaint.**

Once the Court has determined that the FCA complaint is not based on publicly disclosed information, it is not necessary to move on to step two of the analysis. *Springfield Terminal* at 651. Assuming, *arguendo*, that Davis had somehow based his FCA complaint on the information disclosed after the complaint was filed, he would still satisfy the second part of the jurisdictional test. The FCA allows a relator to bring an action based on publicly disclosed information when he is an original source of that information. *Id*.

The FCA defines an original source as one who has direct and independent knowledge of the information, which he voluntarily disclosed to the government prior to filing suit. 31 U.S.C. § 3740(e)(4)(B). Knowledge is "direct" when it is "marked by the absence of intervening agency." Knowledge is "independent" when it is not "itself dependent on public disclosure." *Springfield Terminal* at 656. It is sufficient for a relator to have direct and independent knowledge of *any* essential element underlying the fraudulent transaction; he does not need to have direct and independent knowledge of *all* elements of the transaction, or of the transaction itself. *Id* at 657.

The District's lack of documentation for the FY98 Medicaid claims is an essential element of the false claim at issue in this case. Davis has direct knowledge of this lack of documentation because he prepared the required documentation and has all of it in his possession. (Compl. ¶¶ 14, 20 and Statement at 3-4)[6]. This information was not publicly disclosed at the time Davis filed his FCA action, nor was it revealed in the Joint

---

[6] "Compl." refers to the Complaint and "Statement" refers to the Personal Disclosure Statement of Michael L. Davis attached to the Complaint and incorporated by reference in Paragraph 4 of the Complaint.

Statement in his discrimination action. Since his knowledge of this essential element of the fraudulent transaction is direct and independent, he qualifies as an original source of the information. *Springfield Terminal* at 657.

The "original source" test also requires a relator to voluntarily provide the information on which his claim is based to the government prior to filing suit. *United States ex rel. Alexander v. Dyncorp, Inc*., 924 F. Supp. 292, 300 (D.D.C. 1996). Davis wrote a letter to the Acting Inspector General of the Department of Health and Human Services on April 22, 2005, as well as a letter to United States Attorney General on June 30, 2005, alleging diversion of Medicaid funds and falsification of reports by the District. (*See* letters acknowledging receipt of this information from the Inspector General's Office and the Attorney General's Office attached as Exhibits 1 and 2, respectively.) Since Davis provided the information on which his claims are based voluntarily to the government almost a full year before filing his claim, and since he had direct and independent knowledge of that information, he qualifies as an original source of that information. (*See also* Exhibit 3, letter from Davis to Natwar Ghandi dated Jun. 15, 2005.) Even if the Court were to move beyond the first step of the jurisdictional analysis, Davis's suit satisfies both the "public disclosure" and "original source" tests, and this Court has subject matter jurisdiction to hear his claim.

      **C.**    **The District conflates the "original source" analysis with an analysis of the requirements for pleading fraud.**

The District attempts to establish that Davis does not have direct and independent knowledge of the information underlying his allegations because certain allegations are made on information and belief. In doing so, the District conflates the subject matter

jurisdiction analysis with the Fed. R. Civ. P. 9 (b) analysis (particularity required when pleading fraud) discussed under Section II below. Even if this argument had merit, the FCA plaintiff need only have direct and independent knowledge of *any* element of the fraud claim, as discussed above. *Springfield Terminal* at 657. Missing from the District's list of allegations pled on information and belief is the allegation that the District lacked documentation for its Medicaid claim—one of the complaint's essential elements. The fact that this essential element was not pled on direct knowledge would alone provide evidence of sufficient independent and direct knowledge to allow the court subject matter jurisdiction.[7]

## II.    Davis has Pled Fraud with Sufficient Particularity to Satisfy the Requirements of Rule 9(b).

### A.    Davis's FCA complaint satisfies the purpose of Rule 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") requires a plaintiff to plead fraud with particularity. The purpose of the rule is to ensure that defendants are put on notice of what it is that they will have to defend against and so that they can effectively prepare a response. *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*, 238 F. Supp. 2d 258, 268-269 (D.D.C. 2002). The FCA complaint spells out the fraudulent activity: in the Spring of 2002, DCPS submitted a revised Medicaid Reimbursement Cost Claim for FY98 that it knew was unsupported by any documentation; the reimbursement was then deposited into the District's general treasury account rather than the Special Education Reimbursement account. (Compl. ¶¶

---

[7] The District seems to be trying to say that pleading *any* element of a claim under the FCA on information and belief is fatal to the claim. The Supreme Court case they cite for this proposition is an FCA case that does not discuss information and belief pleading. The other cases cited are not even FCA cases. (Mem. 17).)

18-21 and Statement at 2-3). The District does not say why these allegations are not particular enough for it to prepare a response. It does not assert, for example, that there were multiple revised cost claims submitted for FY98 by DCPS in the Spring of 2002, such that it is unable to determine *which* transaction the complaint is alleging was fraudulent. The District knows precisely which transaction it needs to investigate in order to prepare its defense. It knows exactly what documentation it is looking for and it either has that documentation or it does not. The Complaint pinpoints a specific transaction, describes the nature of the fraud, and alerts the District to the government agency responsible for the transaction—the District cannot reasonably argue that it is not on notice of how to respond to the allegations, and the purpose of Rule 9(b) has been satisfied.

> **B.     All the required elements of fraud are either particularly pled or are peculiarly within the knowledge of the District.**

In order to satisfy the requirements of Rule 9(b), the District of Columbia Circuit requires a *qui tam* plaintiff to plead the following elements of a fraud claim: the time, place and content of the false misrepresentations; the fact misrepresented; what was retained or given up as a consequence of the fraud; and the individuals involved in the fraud. *United States ex rel. Joseph v. Cannon*, 206 U.S. App. D.C. 405, 642 F.2d 1373, 1385 (1981).

Davis has pled that DCPS submitted a false reimbursement claim for FY98 in the Spring of 2002. This claim was false in that it misrepresented that there was documentation to support the claim. The United States government paid the District $68 million pursuant to the false claim. This activity all took place in the District of

Columbia, and Davis specifically identifies Deputy Mayor Erik S. Gaull and Chief Financial Officer for DCPS Don Rickford as individuals with knowledge of the lack of documentation for the claim. (Compl. ¶¶ 18-20 and Statement at 2-3). Davis has pled all of the required elements an FCA claim. *See Bouchey* at 893 (holding similar pleadings to be sufficient for the purposes of Rule 9(b) in an FCA action).

In its Motion to Dismiss, the District takes issue with two of the above elements that they claim are insufficiently specific for the purpose of Rule 9(b). The first is the identification of the Spring of 2002 as the time of the submission of the undocumented claim. (Mem. 21). Again, the purpose of particular pleading in fraud actions is to put the defendant on notice of what they need to do to prepare their response or defense. Unless the DCPS submitted so many FY98 Medicaid revised cost claims for $68 million in the Spring of 2002 that they cannot figure out which one Davis is talking about, their assertion that his pleading of the time element is insufficient is without merit.

The District also argues that Davis's pleadings regarding the circumstances of the submission of the FY98 claims and the payments to the general treasury are insufficient because they are pled on information and belief. While it is generally true that "information and belief" pleadings are not sufficiently particular to satisfy Rule 9(b), this Court allows *qui tam* plaintiffs to plead elements of fraud on information and belief when the information is in the control of the other party. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 363 U.S. App. D.C. 419, 389 F.3d 1251, 1258 (2004). Davis does not have access to DCPS records, and so cannot say that his information regarding the exact circumstances of the claim submission or the deposit into the general treasury account is based on personal knowledge.

In his Personal Disclosure Statement, incorporated by reference to the complaint, Davis explains the basis for his knowledge as to matters that he did not personally witness. (Statement at 1). Read together, the Complaint and the Personal Disclosure Statement provide a sufficient basis for the court to infer that Davis will be able to produce evidence on the essential elements of the fraud claim. *See United States ex re. Harris v. Bernad*, 275 F. Supp. 2d 1, 8-9 (D.D.C. 2003) (holding that FCA complaint does not fail for lack of specificity where such inferences may reasonably be drawn).

When considering a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss, a court should not grant the motion unless the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. The complaint is construed liberally in the plaintiff's favor, and a court should give the plaintiff the benefit of all inferences that can be derived from the facts as alleged. *Bouchey* at 893. The facts in this case have been sufficiently described in the complaint to allow the court to draw such inferences. In light of the particularity of the pleadings in the FCA complaint and the fact that the complaint fulfills the purpose of Rule 9(b), dismissal pursuant to Rule 12 (b)(6) for failure to plead fraud with particularity is not warranted.

### III.    The Complaint Properly Pleads Conspiracy.

#### A.    The intracorporate conspiracy doctrine is inapplicable to this case.

The intracorporate conspiracy doctrine does not bar a conspiracy claim against the District when there are alleged participants in the conspiracy who are not District employees. *Lerner v. District of Columbia*, 362 F. Supp. 2d 149, 165 (D.D.C. 2002). In his Personal Disclosure Statement, Davis identifies the conspirators as District officials, Maximus (also mentioned in Compl. ¶¶ 16, 21), Bert Smith & Co., and others. Davis

asserts that District officials conspired with these other entities, not amongst themselves. (Compl. ¶ 41).

### B.   The complaint clearly states a FCA conspiracy claim.

To state a conspiracy claim under 31 U.S.C. § 3729(a)(3), Davis must show : (1) that defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim. *Bouchey* at 893-894. Davis has alleged that District officials conspired with Maximus and others to submit an unsupported, undocumented claim for Medicaid reimbursement. Then he explains that the DCPS submitted the claim to the United States government. (Compl. ¶¶ 18-20, 41 and Statement at 2). As a result, the United States suffered damage in the amount of the undocumented claim that it paid: $68 million. Davis has stated all three elements of a conspiracy claim pursuant to the FCA.

The District claims that Davis's conspiracy claim nevertheless fails because "[m]issing from this prolix pleading is an assertion of concerted action." The District has ignored pages two and three of the Personal Disclosure Statement, which describes how Maximus and DCPS worked together to submit the unsupported claim. While Davis does not recite the words "Maximus and DCPS agreed to submit the claim," the allegations are read reasonably that "they [Maximus and DCPS] agreed to submit the claim, which they both knew to be undocumented."

[13]

**IV.     DCPS was an independent agency of the District government at the time the FCA complaint was filed.**

The Court of Appeals for the District of Columbia Circuit has entertained suits brought against independent agencies of the District of Columbia sued in their own name. *See Stewart v. District of Columbia Armory Bd.,* 274 U.S. App. D.C. 324, 863 F.2d 1013, 1016 note 7 (D.C. Cir. 1988) (where Armory Board, and independent agency of the District government, is named party).[8]  D.C. Code § 1-204.95, which established the DCPS Board as an independent agency, was repealed by Pub. L. 110-33, § 1, effective June 1, 2007.  Since DCPS was an independent agency at the time the FCA complaint was filed (April 4, 2006), this court has jurisdiction over DCPS.  *See Rockwell* at 1409 (state of affairs at time suit is filed determines jurisdiction).

## CONCLUSION

The allegations in Davis's complaint, when read in the light most favorable to the plaintiff, establish that the District submitted an undocumented Medicaid claim for FY98, and deposited the funds obtained through this false claim into the District's general treasury account.  The pleadings are sufficiently specific to put the District on notice of the exact transaction at issue, and names specific individuals with knowledge of the transaction.  The complaint states a claim for fraud, and pleads it with the particularity required by Rule 9(b).

The information underlying the complaint was not publicly disclosed at the time the complaint was filed and Davis himself was the original source of any information that was later disclosed.  Since there was no public disclosure, the FCA does not prohibit

---

[8] The legislation establishing the Armory Board did not explicitly make the Board *sui juris*. *Simmons v. District of Columbia Armory Bd.*, 656 A.2d 1155, 1157 (D.C. 1995)

subject matter jurisdiction.  For the reasons set forth above, the District of Columbia's Motion to Dismiss should be denied.

Dated: April 28, 2008

                              Respectfully submitted,

                              */S/: Curtis A. Boykin*
                              _____
                              Curtis A. Boykin, (Bar # 444120)
                              DOUGLAS & BOYKIN PLLC
                              1850 M Street NW
                              Suite 640
                              Washington, DC 20036
                              202-776-0370

### CERTIFICATE OF SERVICE

This is to certify that on this 28th day of April, 2008, a true copy of the foregoing Memorandum of Pints and Authorities in Opposition to the District of Columbia's Motion to Dismiss was served via electronic transmission through the electronic case filing system upon counsel for the named parties.

                              */S/*

                              _____
                              Curtis A. Boykin

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br>ex rel. MICHAEL L. DAVIS, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case Number: 06-629 (JDB) |
| v. | )<br>) |
| THE DISTRICT OF COLUMBIA, et al., | )<br>) |
| Defendants. | )<br>) |

**PROPOSED ORDER**

Having considered Defendants' Motion to Dismiss and Relator Michael. L. Davis' Opposition thereto, it is this ___ day of _____, 2008, hereby

ORDERED, that the District Defendants' Motion is denied.

_____
Judge John D. Bates
United States District Court
for the District of Columbia

[16]