# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
THE UNITED STATES OF AMERICA          )
Ex rel. MICHAEL L. DAVIS,                        )
                                                    )
          Plaintiffs,          )
                                                    )    Case Number:  06-629 (JDB)
          v.                     )
                                                    )
THE DISTRICT OF COLUMBIA, et al.        )
                                                    )
          Defendants.          )
_____)

## DISTRICT DEFENDANTS
## REPLY TO OPPOSITION TO MOTION TO DISMISS

Defendants, the District of Columbia (hereinafter "the District") and the District of Columbia Public Schools ("DCSP") (collectively the "District Defendants"), by and through undersigned counsel, reply to the opposition submitted by Michael L. Davis, relator-plaintiff (hereinafter "plaintiff" or "Davis"), and assert that each and every count of the complaint should be dismissed, as well as DCPS.

## I.    SUMMARY OF REPLY

District Defendants' alleged failure to retain or submit the supporting documentation for a Medicaid reimbursement claim is not *per se* a violation of the Medicaid regulations, and is not fraudulent.  Moreover, depositing Medicaid reimbursement funds into the District's general fund is not *per se* fraudulent.

Other district courts have examined the underlying statutes and regulations to determine FCA claim liability.  The underlying Medicaid regulations cited for support by Davis, 42 CFR § 413 Subparts A through G, do not require the extensive documentation to support a cost claim

1

alleged necessary by Davis.  Cost claims only require information "as may be necessary." Cost information data must be "adequate." 42 CFR § 413.24.  Cost reports need only be submitted with a questionnaire, which if absent, the cost report is treated as if never submitted.  42 CFR § 413.24 (f) (5).  Such non-specific, ambiguous language and standards cannot be objectively measured by the fact-finder to support the specificity requirements of fraud.

Davis conflates the "newly participating provider" stringent regulatory compliance standards, 42 CFR § 413.20 (c) (1) with the regulations applicable to "continuing providers," *Id*. at 413.20 (d), which are less stringent.  District Defendants are continuing providers, as admitted by Davis, and need only submit documentation "as may be necessary" or "adequate."

Davis is jurisdictionally barred from sustaining these claims because the underlying allegations that FY 98 costs were disallowed due to the absence or unavailability of supporting documentation were publicly disclosed in an audit published in 2001—five (5) years prior to Davis' FCA complaint was filed.  Davis' False Claims Act, 31 U.S.C. §§ 3729 *et seq.,* complaint adds nothing new to this disclosure.  Davis' "new" allegations amount to no more than a "preparatory scheme," if anything, and fail to state a claim under the False Claims Act.

For these and other reasons more fully discussed below, the District Defendants motion to dismiss should be granted.

## II.    ARGUMENT

### A.  DAVIS FAILS TO SUFFICIENTLY ALLEGE FALSE OR FRAUDULENT ACTIVITY

#### 1.  *District Defendants truthfully certified that "there was documentation to support the claim" for Medicaid reimbursement*

As recognized by this Court in *U.S. ex rel. Fago v. M & T Mortg. Corp.,* 518 F. Supp.2d 108 (D.D.C. 2007) (Kessler, J.), the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA")

provides for two types of liability, to sustain a claim. (*Id*. at 220, citing *United States ex rel. Schwedt v. Planning Research Corp.,* 59 F.3d 196, 199 (D.C. Cir.1995).[1] "First, the submitter of a 'false claim' or 'statement' is liable for a civil penalty, regardless of whether the submission of the claim actually causes the government any damages." *Id.* Thus, as a general rule, Plaintiff need not prove that the alleged false statements caused the Government any actual damages in order to recover statutory civil penalties under the FCA. *Id.*

However, the District Defendant's claim for Medicaid reimbursement was neither false nor were the supporting documents required to be submitted with the claim as a matter of law. Thus, Davis cannot prevail on its FCA claim contrary to Davis' Opposition to Motion to Dismiss (hereinafter "Opposition").

Davis' opposition argument, complaint and personal disclosure statement do not state a claim upon which relief may be granted because the underlying regulations, 42 CFR § 413 subparts A-G do not require submission of supporting documentation. (See, Compl. ¶ 8); (See Mem. op. page 2, "[T]he District's lack of documentation for the FY98 Medicaid claims is an essential element of the false claim at issue in this case"); (see, *id*. at. page 10, "[t]his claim was false in that it misrepresented that there was documentation to support the claim."); (see, Personal Disclosure Statement of Michael L. Davis, page 2 of 5, "[F]urther, we learned that DCPS had used our (D&A) calculations and figures to revise the claim, knowing that neither they nor Maximus could support or document any claim reimbursement.") (hereinafter "Davis Statement").

---

[1] The second form of liability under the FCA is for damages actually caused to the federal funding agency because of the submission of the false claim, which is discussed infra, Section II.A.4, pages 7-8.

The certification in the regulations does not require submission of supporting documentation; it requires the District to **examine** the cost report. 42 CFR § 413.[2] As a regulatory matter, the documents only needed to be **reviewed** by the chief operating officer[3], which Davis admits occurred. The District reviewed the cost report that was submitted.

Davis admits that that the District reviewed the cost report when Davis, "submitted the FY98 DCPS cost claim to the District of Columbia Medical Assistance Authority (the "DCMAA") for **review** and approval. (Complaint ¶ 14) (Emphasis added). The words "review" and "examine" are synonyms.[4] Since Davis admits that the District **examined/reviewed** the cost report, the District fulfilled its regulatory duty when it submitted the cost reimbursement claim. That the District Defendants may have reviewed the supporting documents in 1998 when Davis tendered them for examination, as opposed to immediately before the revised cost report was submitted for payment in 2002, is not violative of any regulatory provision.

---

[2] 42 CFR § 413.24 (f) (iv) contains two (2) certification requirements. Plaintiff makes no claim regarding the second certification, i.e., the "services identified in [the] cost report," thus, District Defendants do not address this argument herein.

[3] The regulations require that the District Defendants execute the following certification when submitting their claim for Medicaid reimbursement:

> I hereby certify that I have read the above certification statement and that **I have examined the accompanying electronically filed** or manually submitted cost report and the Balance Sheet Statement of Revenue and Expenses prepared by _____ (Provider Name(s) and Number(s)) for the cost reporting period beginning ___ and ending ___ and that to the best of my knowledge and belief, this report and statement are true, correct, complete and prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

42 CFR § 413.24 (f) (iv) (Emphasis added.)

[4] Dictionary. *The American Heritage® Dictionary of the English Language*, Fourth Edition Copyright © 2007, 2000 by Houghton Mifflin Company. Updated in 2007. Published by Houghton Mifflin Company. All rights reserved.

There can be no "false certification" claim pursuant to 31 U.S.C. § 3729 (a) (1) (Compl. ¶ 30-34), if the underlying Medicaid regulation only requires that the District **examine** the documents supporting the claim, which, by Plaintiff's own admission, the District did.

### 2. *Physical possession of documentation supporting the Medicaid claim is not required so long as the District Defendants retained legal possession.*

At all relevant times the District Defendants had legal possession of the supporting documentation since its agent, Davis, only held physical custody for which it was and is required by law to preserve and protect for the benefit of the District Defendants. So long as Davis retains the supporting documentation, the District Defendants retain the documentation as a matter of law. Thus, Davis' claim that the District Defendants submitted a revised claim "for which neither the District nor Maximum (sic) possessed supporting documentation" (Compl. ¶ 19) is without merit, as more fully discussed below.

Davis admits a principal-agent relationship in that, "[I]n 1995, Health Management Systems and Davis & Associates [Plaintiff] was awarded a contract (with extensions) to design, develop, and implement a Medicaid Reimbursement Recovery Program for the DCPS' Special Education Program." (*Id*. ¶ 10). Given that admission of a contractual relationship, Davis is an agent of the District Defendants as a matter of law. RESTATEMENT (Second) of Agency § 14N (1958) (One who contracts to act on behalf of another to the other's control, except with respect to his physical conduct, is an agent and also an independent contractor.)

Furthermore, Davis admits that it retained the documentation supporting the Medicaid cost claim. (Compl. ¶ 14, "Davis and Associates submitted the FY98 DCPS Cost Claim to the District of Columbia Medical Assistance Authority (the "MAA") **for review and approval**.

Thereafter, **Davis and Associates retained all documentation supporting said end of year Medicaid cost claim**") (emphasis added).

The District, as principal, therefore, retains legal possession of the documentation that support its 2002 Medicaid reimbursement claim for Medicaid reimbursement.  It is hornbook law that an agent's possession, such as the Davis' physical custody of the documentation, is always in the legal possession of the principal.  When a principal has entrusted funds or property to his agent, title to the property remains in the principal, and the agent hold the property for the owner's benefit.

> [A]n agency is a relationship arising from a contract, express or implied, by which one of the parties confides to the other the transaction or management of some business or other activity in the principal's name, or on the principal's behalf, and whereby the agent performs the anticipated act and renders an account thereof. [T]he title to the property remains in the ... principal, and the ... agent holds the property ... for the owner's benefit.

Collier on Bankruptcy ¶ 541.06[1][a] (15th ed.1999)

The District Defendants could truthfully certify to Medicaid that, "**there was documentation to support the claim,**" assuming *arguendo* the certification was made, because the District Defendants held and continue to hold legal title and legal possession of the records and documentation even though the documentation was allegedly in Davis' physical custody. Davis' contention that the District Defendants falsely certified the existence of supporting documentation is without legal merit.

### 3.  *Davis confuses the legal standards required in the Medicaid Cost Reimbursement Regulations, 24 CFR § 413.20*

Davis' opposition confuses the District Defendants' legal duty to abide by the principles of cost reimbursement with fraudulent activity.  The regulations require that, "providers **maintain** sufficient **financial records** and statistical data for proper determination of

6

costs payable under the program." 24 CFR § 413.20 (a). (Emphasis added.) Davis fails to

recognize, however, that the agency relationship mandates that Davis, "**maintain** sufficient

financial records." Again, an agent merely holds the agency property for the benefit and at the

direction of the principal. *In re Crouthamel Potato Chip Co. Inc*., 6 B.R. 501, 509 (Bankr.

E.D.Pa. 1980) (citing RESTATEMENT (Second) of Agency § 1, 13 & 14 (1958); *see also,*

*Lewis v. WMATA,* 463 A. 2d. 666, 670 (D.C. 1983) (An agent is obliged to keep his principal's

property in a safe place.) Moreover, maintenance of financial records should not be confused to

mean "submission" as Davis attempts to do in its pleadings.

### 4. Davis did not and cannot prove that Medicaid reimbursed the District Defendants' submitted cost claim "because of" alleged false statements

The second form of liability under the FCA is for damages *actually* caused to Medicaid

*because of* the submission of the false claim. *U.S. ex rel. Fago* at 200. To recover for these

damages, Davis must plead causation--specifically that the District Defendants caused Medicaid

to pay claims "because of" the alleged false statements. *Id*.; 31 U.S.C. § 3729(a). Davis states

that, "[it] has pled that DCPS submitted a false reimbursement claim for FY98 in the Spring of

2002. **This claim was false in that it misrepresented that there was documentation to**

**support the claim**." (Emphasis added). (Mem. Op. page 10). Further, Davis paints the

"ultimate issue" as "a misappropriation of Medicaid funds through the knowing acceptance and

transmission of a Medicaid claim for **reimbursement without proper documentation**. . .." (*Id*.

at page 3) (Emphasis added).

The problem with Davis' argument is two-fold. First, Davis must plead that if proper

documentation was submitted, the federal government would not have paid the claims. *U.S. ex*

*rel. Fago* at 200.  However, the four-corners of Davis' complaint and opposition do not make such a claim, nor can such a claim be made it without bringing Davis into the alleged conspiracy.

Secondly, Davis admits that the claim submitted by the District Defendants was, for all intents and purposes, Davis' work product.  If the underlying documentation is false, Davis had a part in its compilation.[5]  If the substance of the reimbursement claim is "false" or "fraudulent," then Davis is equally a part of a conspiracy to defraud.

Davis incorrectly conflates "who" submitted the claim, in this case, the District Defendants and Maximus, with "whether" and "how" the federal Medicaid fund was somehow defrauded.  It is the substance of the claim that renders it fraudulent—not who submitted it.  It is the claims certification that renders it fraudulent—not whether there is or is not supporting documentation.[6]

If the substance of the 1998 revised claim that was, "increased to the exact amount of the D&A recommended FY98 claim" (Davis Statement, page 2 of 5), then Davis is also an alleged conspirator by preparing the false documentation in the first place. Otherwise, Davis cannot sustain his claim for the second type of liability under the FCA, *i.e.,* that the District Defendants

---

[5] Davis admits that the underlying cost claim was its work product by stating in its complaint, "Defendant DCPS submitted the FY98 DCPS Cost Claim  . . ., the exact amount of the FY98 DCPS Cost Claim prepared by Davis & Associates."  (Compl. ¶ 18.)

[6] Davis' FCA claim is based on an alleged failure to submit documentation with a "cost claim."  However, even if it was based upon an alleged failure to submit a "cost report," Davis' claim would likewise fail, since the regulations self-execute unacceptability of a defectively supported cost report.  The regulations treat the cost report as if it had never been submitted—thus no fraud may be inferred.  24 CFR § 413.24 (f) (5)--An acceptable cost report submission is defined as follows:

(i) All providers--The provider, must complete and submit the required cost reporting forms, including all necessary signatures. A cost report is rejected for lack of supporting documentation only if it does not include the Provider Cost Reimbursement Questionnaire.
* * *
(iii) The intermediary makes a determination of acceptability within 30 days of receipt of the provider's cost report. If the cost report is considered unacceptable, the intermediary returns the cost report with a letter explaining the reasons for the rejection. **When the cost report is rejected, it is deemed an unacceptable submission and treated as if a report had never been filed.**
**(emphasis added).**

caused the Government to pay claims "because of" the alleged false statements.  *U.S. ex rel.*

*Fago* at 200.

### B.  DAVIS FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BASED ON THE MEDICAID REGULATORY STANDARDS

#### 1.  The Medicaid Act

The Secretary of Health and Human Services administers the Health Insurance for the

Aged and Disabled Program, 42 U.S.C. §§ 1395 - 1395aaa (Medicare Program), and has

delegated that responsibility to the Centers for Medicare and Medicaid Service (CMS).  Part A of

the Medicare Program pays for inpatient hospital, home health, and skilled nursing services

provided to Medicare beneficiaries.  The providers of services must meet the statutory criteria

and enter into Health Insurance Benefit Agreements (Provider Agreements) with the Secretary,

through CMS, pursuant to 42 U.S.C. § 1395cc. CMS may not reimburse a provider unless it

executes a Provider Agreement.

The District of Columbia is a provider with respect to medical facilities that it directly

oversees, such as the now defunct D.C. General Hospital.  Under the provider agreement, the

District is reimbursed for services on the basis of "reasonable costs" as defined in the federal

regulations. 42 C.F.R. § 413.1 *et seq*.  Subpart A of the regulations provides guidance and

general rules of cost reimbursement for providers to follow.  *Id*. at 413.1 -412-17.  Subpart B

regulates accounting records and reporting.  *Id*. at 413.20-413.24.

The regulations set forth separate recordkeeping requirements for new providers and continuing providers. *Id*. at § 413.20 (c) and (d). The District Defendants are continuing providers. [7]

### 2. The Medicaid Regulations only require that "Continuing Providers" such as the District Defendants Furnish Supporting Documentation to Medicaid "As May Be Necessary" and "Adequate"

At the root of this FCA dispositive motion is the parties' differing interpretation of the Medicaid regulations regarding payment submissions and supporting documentation. Davis pins its hope of a windfall FCA recovery on this Court drawing an inference that the District Defendants' 2002 documentation in support of FY98 Medicaid reimbursement was non-existent, and, therefore, fraudulent. This Court cannot draw that inference as a matter of law.

There is no regulatory "requirement" of specific supporting documentation submission. The regulatory requirements are that the submissions be adequate and necessary, as discussed more fully below.

The regulation upon which this Court must judge the sufficiency of Davis' fraud claim states only, "[T]he provider must furnish such **information** . . . **as may be necessary to—**

> (i)    Assure proper payment by the program, including the extent to which there is any common ownership or control (as described in §413.17(b)(2) and (3)) between providers or other organizations, and as may be needed to identify the parties responsible for submitting program cost reports;

> (ii)    Receive program payments; and

> (iii)    Satisfy program overpayment determinations.

---

[7] Complaint ¶ 11-12 asserts that for several years prior to its contract expiration in 1998, Plaintiff Davis helped the District prepare and submit Medicaid payment reimbursement to CMS. Thus, Davis admits that the District is a continuing provider under the regulations.

42 CFR § 413.20(d).  (Emphasis added).

The regulations state that the, "cost information data" submitted to CMS in support of Medicaid reimbursement must be **adequate**.  42 CFR § 413.24.  (emphasis added). "The requirement of adequacy of data implies that the data be accurate and in sufficient detail to accomplish the purposes for which it is intended."  *Id.* at § 413.24(c).

Medicare maintains a right to suspend provider payments where fraud is suspected. 42 CFR § 413.20 (e) (CMS has power to suspend program payments to a provider).   Medicaid has not suspended the District from Medicaid or Medicare participation.  This Court should not punish the District Defendants where the CMS, administrative agency, has not chosen to do so.

### 3.    *The Strict Fraud Pleading Requirement Precludes Davis relief under the ambiguous Medicaid principles of reasonable cost reimbursements, 42 CFR § 413 Subpart B*

Davis' underlying legal claim suffers the fatal flaw of ambiguity, and supports District Defendants' motion to dismiss.  The FCA does not support a claim predicated on the "adequacy" of cost information data, or the "as may be necessary" language of the underlying regulations.  If anything, it is unclear what is intended since it has not been interpreted by CMS.[8]  It is a giant

---

[8] At most, the regulations, 42 CFR § 413.9 (b) provide definitions for "reasonable costs" and "necessary and proper costs", which are not at issue in this lawsuit; however, these definitions show that CMS could interpret relevant terms:

 (1) Reasonable cost. Reasonable cost of any services must be determined in accordance with regulations establishing the method or methods to be used, and the items to be included. The regulations in this part take into account both direct and indirect costs of providers of services. The objective is that under the methods of determining costs, the costs with respect to individuals covered by the program will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program. These regulations also provide for the making of suitable retroactive adjustments after the provider has submitted fiscal and statistical reports. The retroactive adjustment will represent the difference between the amount received by the provider during the year for covered services from both Medicare and the beneficiaries and the amount determined in accordance with an accepted method of cost apportionment to be the actual cost of services furnished to beneficiaries during the year.

(2) Necessary and proper costs. Necessary and proper costs are costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs that are common and accepted occurrences in the field of the provider's activity.

leap to infer fraud or false claims liability where the underlying enactment's standards are amorphous or not administratively interpreted. *See, Illinois Council on Long Term Care v. Miller, 579 F. Supp. 1140, 1144* (N.D. Ill. 1983) (Under the doctrine of primary jurisdiction, the District Court declined to determine whether Illinois' amended Medicaid program provision conformed with federal standards since determination state compliance to federal standards was in the first instance properly made by the Secretary of Health and Human Services.)

Other District Courts have looked to the underlying laws and regulation to determine FCA liability. In *United States v. Napco Int'l, Inc.,* 835 F. Supp. 493, 497-98 (D. Minn. 1993), the court deciding an FCA claim was confronted with an underlying statute that was ambiguous as to whether certain behavior satisfied it. The statute, the Arms Control Act, required that contractors who procured items for the government were to purchase only items of "American origin." The defendant purchased American-made military supplies obtained from an Israeli firm and certified they were "wholly of U.S.A. origin." The government argued that the statutory language required the defendant to buy from American entities, while the contractor argued it permitted buying from foreign entities, as long as the items were of American origin. The court noted that the Act states its purpose: "special emphasis shall be placed on procurement in the United States." *Id.* Accordingly, the court held that the defendant's claims were not false because the statute was ambiguous and the regulations were silent on this issue. S*ee also, United States ex rel. Milam v. Regents of the Univ. of Cal.,* 912 F. Supp. 868, 884 (D. Md. 1995) (holding that applicant's failure to include information in each successive grant application, while inclusion may have been preferable, applicant did not violate FCA because disclosing information, "simply was not required by law.").

Similarly, the Medicaid regulations, 42 CFR § 413.20 and 413.24, are ambiguous as to specific documentation required to support the claim's payment.  Non-specific language such as "**information** . . . **as may be necessary to**" or "**adequate**" cost information cannot be objectively measured against any stated administrative standard by the fact-finder to support the specificity requirements of fraud.  Moreover, there is no statutory requirement of specific documentation.  Lastly, Davis points to no CMS administrative determination in this context regarding adequacy of supporting documentation requirements for continuing providers.

In summary, Davis seeks to usurp the role of CMS in making the interpretation of these terms and requirements, an element of a fraud claim and, also, concomitantly asserting that any deviation from Davis' self-serving standard is tantamount to fraud.  Such an argument is specious.

4. ***The Medicaid Regulations, 42 CFR § 413.20, do not require "Continuing Providers," such as the District Defendants, to submit auditable supporting documentation to CMS***

Davis admits that the District Defendants had submitted prior draw-downs.[9]  Thus, the District Defendants are continuing providers.  The regulations provide that "continuing providers need only provide documentation "as is necessary."  *Id*. at 413.20 (d) (1); (*see also* Complaint ¶ 9); (*See* discussion, *supra*, page 10). Continuing provider recordkeeping requirements and standards applicable to the District Defendants are far less stringent than the standard that Davis seeks this Court to apply.  *Id*.  The standard for inspection of District Defendants' documents is also, "as are necessary" to determine proper payment.  *Id*. at § 413.20 (d) (2).  The standard for furnishing copies of patient charge schedules is merely, "upon request."  *Id*.  District Defendants

---

[9] Complaint ¶ 11-12 asserts that for several years prior to its contract expiration in 1998, Plaintiff Davis helped the District prepare and submit Medicaid payment reimbursement to CMS.  Thus, the District is a continuing provider under the regulations.

are not regulated by the higher standard of supporting documentation submission required of **new** providers under the regulations.  42 CFR § 413.20 (c) (1).

New participating providers must submit stringent auditable documentation, to wit:

> A newly participating provider of services (as defined in Sec. 400.202 of this chapter) must make available . . . for examination its fiscal and other records for the purpose of determining such provider's ongoing recordkeeping capability. . .. This examination is intended to assure that-- (1) The provider has an adequate ongoing system for furnishing the records needed to provide accurate cost data and other information capable of verification by qualified auditors and adequate for cost reporting purposes under section 1815 of the Act.

Davis wants this Court to apply the "newly participating provider" standard contained in the federal regulations, 42 CFR § 413.20 (c) (1), to the District Defendants in this case.  This Court should not impose the Medicaid standards and regulations applicable solely to new providers where the Medicaid agency charged with implementation and determination of appropriate standards, CMS, has not done so.

> **5.  *Allegations that the District Defendants Deposited Reimbursed Medicaid Funds in the General Fund Fail to State Claims under 31 U.S.C. §§ 3729 et seq.***

Davis asserts that the District Defendants deposited the FY98 Medicaid reimbursement funds into the District's general fund, as opposed to an earmark fund, and therefore, committed fraud under the FCA.  31 U.S.C. §§ 3729 *et seq.* (Mem. Op. page 9).  However, there is no regulatory prohibition on depositing the Medicaid funds into the District's general fund, as opposed to an earmark fund.  *Id.*  There is no specific statutory or regulatory provision cited in Davis' complaint or opposition for support of this allegation.

Factually, Davis does not even know if a deposit was made to the District's general fund.[10]  In addition, such a deposit after the funds were received does not "cause" the federal government to pay a false claim, *U.S. ex rel. Fago* at 200, since the claim is already paid prior to the deposit.

Davis fails to allege any certification or promise made by the District Defendants to the federal government that a specific bank account would receive the DCPS funds or that a specific account deposit was required.  Assuming *arguendo* such a deposit was made, Davis fails to cite to any Medicaid statutory, regulatory, or case law in its Opposition to support its contention that the Medicaid deposit location is violative of the FCA.

### C.  DAVIS IS JURISDICTIONALLY BARRED FROM PURSUING THESE CLAIMS

#### 1.  *Davis' Opposition and complaint have not sufficiently supported its burden to prove subject matter jurisdiction by a preponderance of the evidence*

This Circuit has interpreted the *qui tam* statute in *United States ex. rel. Findley v. FPC-Boron Employees' Club,* 105 F.3d 675, *supra*, and *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645 (D.C. Cir. 1994).  According to this Circuit, "the jurisdictional bar is triggered whenever the relator files a complaint describing allegations *or* transactions *substantially similar* to those in the public domain." *Findley,* 105 F.3d at 682 (emphasis added).  Its purpose is "to limit *qui tam* actions 'to those in which the relator has contributed significant independent information [that is not already in the public domain].'" *Id.* at 682 (brackets supplied by the Court), (quoting *Springfield Terminal Ry. Co.,* 14 F.3d at 653). The jurisdictional bar thus applies, "'when either the allegation of fraud *or* the critical elements of the fraudulent

---

[10] See Davis Personal Disclosure Statement attached to complaint, page 4 of 5, ("[Davis] asked if the funds had been transferred to the Special Education Reimbursement account and if so, would we be paid from that account.  None present answered the question of which account had be (sic) paid . . ..")

transaction themselves were in the public domain.'" *Id.* at 683 (emphasis added), quoting *Springfield Terminal Ry. Co.,* 14 F.3d at 654.  Put another way, "*qui tam* actions are barred ... when enough information exists in the public domain to expose the fraudulent transaction ... or the allegation of fraud ..." *Findley,* 105 F.3d at 686, quoting *Springfield Terminal Ry. Co.,* 14 F.3d at 654.

Whether Davis' claims were based on allegations that have been publicly disclosed for the purposes of a jurisdictional bar was insufficiently addressed in Davis' Opposition.  (Mem op. page 5, "[T]here is no need here to move beyond the first step, because the information underlying Davis' allegations were [sic] not publicly disclosed in a hearing, investigation, or in the media at the time he filed this FCA Complaint").  Davis' mere conclusory denial is insufficient to support jurisdiction when, as here, it is Davis' burden to prove jurisdiction by a preponderance of the evidence.  See, *Am. Farm Bureau v. Environmental Port. Agency,* 121 F. Supp. 2d 84, 90 (D.D.C. 2000) (In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence.)

District Defendants cited one prior public disclosure in their motion to dismiss.  (Mem. Pt. Auth., pages 14-15).  However, District Defendants are not precluded from discovering or asserting additional bases or locations of a prior public disclosure of allegations or transactions. 31 U.S.C. § 3730(e) (4) (A) (The jurisdictional bar in 31 U.S.C. § 3740(e)(4)(A) prohibits actions based on publicly disclosed information when either the *allegations* of fraud have been made public or the *essential elements* of fraud have been made public, *Springfield Terminal* at 654).

The undisputed facts (not contested by Plaintiff) concerning public disclosure of the facts underlying Davis' claim was made in a 1998 audit, finalized in a 2001 audit, and referenced in a 2002 audit report, five (5) years prior to Davis' FCA complaint was filed.  The August 7, 2002 audit, attached hereto as Exhibit "A," and incorporated by reference herein (hereinafter "2002 Audit"), acknowledges the same deficiencies in the DCPS Medicaid program that are alleged in Davis' complaint.

More to the point, however, this 2002 Audit specifically makes the same factual assertions as Davis regarding the absence or unavailability of supporting documentation and places these facts squarely within the public forum by stating:

> Recordkeeping deficiencies, regardless of their causes, have a substantial financial impact on DCPS through the loss of Medicaid reimbursements as indicated in the **Medicaid audits for fiscal years 1996 through 1998**.[11] These audits, **which were finalized in fiscal year 2001**, revealed that $15 million of **costs incurred for services rendered to special education students were disallowed for Medicaid reimbursement due to the absence or unavailability of supporting documentation**.[12]

(*Id.* at page ii) (Emphasis added).  Thus, there is a fiscal year 1998 audit which was finalized in fiscal year 2001, which already made a public disclosure of the "absence or unavailability of supporting documentation."  The 2002 Audit acknowledged that these facts amount to "wrongdoing."  Thus, Davis disclosed nothing new in his FCA complaint.

"[A]llegations of fraud are publicly disclosed when they are placed in the 'public domain.'" *U. S. ex rel. 2* (2nd Cir. 1992) (citation omitted). This requirement precludes, "*qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." *U. S. ex rel. Kreindler &*

---

[11] The above-captioned FCA complaint relates to FY98 DCPS Medicaid claims which were revised and re-submitted in 2002.

[12] The audit disclosed deficiencies in supporting documentation, as also alleged by Davis; however, neither CMS nor this Court should conflate such a finding as fraudulent or a FCA violation

*Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1158 (2nd Cir. 1993) (citing *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1155-56 (3d Cir. 1991)).  Public disclosure may be achieved by several methods, include state and federal hearings and trials, discovery documents, and federal government reports, hearings, audits, and investigations and, in some cases, state or federal Freedom of Information Act requests. *See, e.g., Kreindler, supra* (civil lawsuit filed in federal court); *Doe, supra.,* 960 F.2d at 323 (federal government agency investigation); *U.S. ex rel. Mistick PBT v. Housing Auth of Pittsburgh*, 186 F.3d 376, 383 (3d Cir. 1999) (Alito, J.) (Freedom of Information Act response and pre-trial discovery trigger public disclosure jurisdictional bar).  Both the Eighth and Ninth Circuits concur that audit reports prepared by a state agency may be public disclosure.  *Hays v. Hoffman*, 325 F.3d 982, 988 (8th Cir. 2003); *U.S. ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 918 (9th Cir. 2006).

        The D.C. Circuit has not opined on whether a state audit is public disclosure sufficient to grant or deny FCA jurisdiction; however, factually, the District's audit publicly disclosed the absence of supporting Medicaid documentation.  CMS or any other entity would have knowledge of that fact prior to Davis' FCA complaint, and caused the Justice Department to investigate.  That CMS did not foreclose the District's continued participation in Medicaid's cost reimbursement program is the best evidence of the facial invalidity of Davis' FCA suit!

         Davis should be precluded from advancing this costly and time-consuming FCA lawsuit, its second bite at the apple for contractual damages arising from its past relationship with the District Defendants.  This Court should rule that the state audit is sufficient public disclosure.

### D.  INFERENCES OF FRAUD ARE NOT FAVORED IN THE LAW

Davis' Opposition has not sufficiently supported the specificity required of fraud pleading.  Davis requests that this Court **draw an inference of fraud**, even though Davis is required by law to plead and prove fraud with particularity.  *Luckey v. Baxter Healthcare Corp*., 2 F. Supp. 2d 1034, 1049 (N.D. Ill. 1998), *aff'd*, 183 F.3d 730 (7th Cir. 1999), *cert. denied*, 528 U.S. 1038 (citing *U. S. v. Adler*, 623 F.2d 1287, 1289 (8th Cir. 1980)) (In those case where there is a dispute as to whether or not a claim is "false" the courts have held that the plaintiff must prove that the claim, or statements or records submitted in support of the claim, are "false under any reasonable interpretation.").  As a matter of law, equity, and fact, there are at least two reasonable interpretations why the 2002 records submitted by the District Defendants in support of their 1998 Medicaid claims do not sustain Davis' claim of fraud sufficient to support an FCA claim.

First, Plaintiff's opposition asserts, incorrectly, that, "the FCA complaint spells out the fraudulent activity: in the Spring of 2002, DCPS submitted a revised Medicaid Reimbursement Cost Claim for FY98 that it knew was unsupported by any documentation; the reimbursement was then deposited into the District's general treasury account rather than the Special Education Reimbursement account. (Mem. op. page 10).  These allegations, however, allege no more than a preparatory scheme, and do not put the District Defendants on notice of an adequate claim.

Secondly, notice to defendants is not the only rationale for pleading fraud with specificity, as Davis' seems to allege in its Opposition. (Mem. op. pages 9—10).  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 258, 267 (D.D.C. 2002) (Law of the case doctrine caused D.C. Circuit to affirm that relator's complaint met the heightened pleading standard and provided adequate notice to the defendants) (hereinafter

"*Pogue*"); reliability, *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (citing

*U.S. ex rel. Clausen v. Lab Corp of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002); and, to

discourage nuisance suits, *Pogue, supra* at *269* (citing *United States ex rel. Alexander v.*

*Dyncorp, Inc.,* 924 F. Supp. 292, 303-304 (D.D.C.1996), among other reasons.

 As well-stated in the case of *U.S. ex rel. Feingold v. Palmetto Government Benefits*

*Administrators*, 477 F. Supp. 2d 1187 (S.D. Fla. 2007):

> Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall
> be stated with particularity" does not permit a False Claims Act plaintiff
> merely to describe a private scheme in detail but then to allege simply and
> without any stated reason for his belief that claims requesting illegal payments
> must have been submitted, were likely submitted or should have been
> submitted to the Government.

*Id.* at 1194. Similar to the plaintiff in *Feingold*, Davis does little more than allege a series of

events that precede an alleged submission of a claim. Davis fails to allege **his** actual knowledge

of the District's certification or that a false certification was made. Pleading on "information and

belief" is insufficient to support Davis' claim.[13]

 More specific pleading is required before this court makes, "assumptions about a False

Claims Act defendant's submission of actual claims to the Government." *Id.* "The 'true essence

of the fraud' in a FCA action involves an actual claim for payment and not just a preparatory

scheme." *Id.* Davis' factual pleading nowhere asserts or supports that an actual claim for

payment was made in 2002 for FY98 or that Davis has actual knowledge of such a claim for

payment.

---

[13] The crux of Davis' *qui tam* fraud claims lacks specificity and is pled on "information and belief." Examples of Davis' "information and belief" pleadings are as follows: Davis alleges that DCPS submitted an incorrect claim to Medicaid for the FY98 period (Compl. ¶ 18); Davis alleges that the FY98 Medicaid Cost Claims were not paid to the DCPS Medicaid account; but were paid, instead, to the District's general treasury account (*Id*. at 21). There is no allegation of who, specifically, submitted the claim to the U.S. government, or when exactly it was submitted. The complaint only states that a claim was submitted, on information and belief "in or about the Spring of 2002." (Compl. ¶18).

As stated above, a further purpose of stringent fraud pleading standards is to discourage nuisance suits and frivolous accusations. *Pogue, supra* at *269* (citing *United States ex rel. Alexander v. Dyncorp, Inc.,* 924 F. Supp. 292, 303-304 (D.D.C.1996) (the *Alexander* court tacitly acknowledged that it was applying 9(b) with severe stringency to effectuate these policies.) Having failed previously on its contract claim[14], Davis now appears to have recast this alleged claim to one for fraud solely to continue a flailing lawsuit. Davis' FCA complaint is a ruse to collect contractual damages that previously escaped his grasp and force a contractual settlement, as the District Defendants noted in their Motion to Dismiss. This FCA suit is a continuing attempt to obtain an award to which Davis clearly is not entitled. It is nothing more than a frivolous, nuisance lawsuit.

### E.  THE D.C. SCHOOL DISTRICT IS NOT A PROPER PARTY

Davis' reply correctly alleges that DCPS was an independent agency at the time the FCA complaint was filed (April 4, 2006). (Mem. op. page 14) That said, Davis is still mistaken about this Court's jurisdiction of the School District, as well as whether the School District may be sued in its own name. (*Id.*) DCPS is *non sui juris*.

"The District of Columbia Public Schools, . . . , is not a suable entity under the District of Columbia Code." *Graetz v. District of Columbia Public Schools,* 1987 WL 8527 *1 (D.D.C 1987); *see also, Kundrat v. Dist. of Columbia*, 106 F.Supp.2d 1, 7 (D.D.C. 2000) (noting the "overwhelming weight of precedent in this Circuit which holds that, in the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities") (internal quotation omitted); *Winder v. Erste*, 2005 U.S. Dist. LEXIS 5190, at

---

[14]  (Dist. Defts. Mem. Pts. Auth. fn. 1, in *Davis v. District of Columbia*, 501 F. Supp. 2d 77, 80-81 (D.D.C. 2007) (Kessler, J.), this same court dismissed Davis' claims under 42 U.S.C. §§ 1981, 1983 for $268 million on the basis that the underlying contract, which is the same contract alleged *sub judice*, was void *ab initio* for failure to comply with the Anti-Deficiency Act, 31 U.S.C. § 131 et seq. and was not signed by the parties to be bound.)

*11 (D.D.C. Mar. 31, 2005) ("DCPS is not a suable entity under the D.C. Code"); *Tschanneral v. D.C. Bd. of Educ.*, 594 F. Supp. 407, 409 (D.D.C.1984) ("Since the statute establishing the District of Columbia Board of Education ... does not provide that the Board of Education may sue or be sued, the Board is not a suable entity."); *Kelley v. Morris*, 400 A.2d 1045, 1047 (D.C.1979) (same).  This Court is obliged to follow the overwhelming weight of precedent developed by District of Columbia local courts and to dismiss DCPS.

## III.     CONCLUSION

For all the reasons set forth above, the Davis' complaint, and the School District should be dismissed with prejudice.

Respectfully submitted:

PETER NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

ELLEN EFROS [250746]
Chief, Equity Section I

/s/ Denise J. Baker
Denise J. Baker
D.C. Bar No. 493414
Assistant Attorney General
441 4th Street, Northwest, 6th Floor South
Washington, D.C. 20001
202-442-9887 (Telephone)
202-727-0431 (Facsimile)
Denise.baker@dc.gov

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May 2008, true copies of the foregoing Reply to Plaintiff's Opposition to Motion to Dismiss was filed electronically with the Court for ECF service upon:


Frederick A. Douglas
Curtis A. Boykin
1401 Eye Street NW, Suite310
Washington, DC 20005

/s/ Denise J. Baker
DENISE J. BAKER