

# OFFICE OF THE DISTRICT OF COLUMBIA AUDITOR

717 14TH STREET N.W., SUITE 900
WASHINGTON, D.C. 20005
TEL 202-727-3600 • FAX: 202-724-8814

727-0431

Deborah K. Nichols
District of Columbia Auditor
020:02:OW:VH

August 7, 2002

**D.C. Public Schools' Medicaid Revenue Recovery
Operations Require Substantial Improvements**

**August 7, 2002**

# TABLE OF CONTENTS

EXECUTIVE SUMMARY ................................................................................................ i

PURPOSE ........................................................................................................................... 1

OBJECTIVE, SCOPE, AND METHODOLOGY ............................................................... 1

BACKGROUND ................................................................................................................ 2
    Medicaid Reimbursable Special Education Services ................................................. 3
    DCPS' Organizational Structure Implementing Medicaid Recovery .......................... 6
    Medicaid Recovery Methods for DCPS ...................................................................... 7
    Periodic Billing: Fee For Service Billing and Per Diem Billing ................................. 7
    Annual Cost Settlement Claim .................................................................................... 8
    Results of Prior Reviews of the MRU ......................................................................... 9

FINDINGS ........................................................................................................................ 11

MRU's FAILURE TO BECOME FULLY FUNCTIONAL IMPEDES RECOVERY OF
    AT LEAST AN ADDITIONAL $5 MILLION IN MEDICAID REIMBURSEMENTS
    FOR THE PERIOD OCTOBER 2000 THROUGH FEBRUARY 2002 ...................... 11
    Formal Budget Not Established to Support Organizational Development of the MRU ...... 13
    Lack of Policies Regarding the Medicaid Application Process Prevents
        Maximization of Medicaid Reimbursements ......................................................... 14
    MRU and DCPS' OCFO Have Not Performed all Activities Necessary to Facilitate
        In-House Billing ..................................................................................................... 15

IMPROPERLY MAINTAINED RECORDS THROUGHOUT THE SCHOOL SYSTEM
    MAY CAUSE DCPS TO LOSE FUTURE MEDICAID REVENUE ........................ 20

INSUFFICIENT MEDICAID CLAIM RECONCILIATIONS RESULTED IN $6.6 MILLION
    IN DENIED CLAIMS THAT MAY YIELD ADDITIONAL REVENUE ................. 23
    Fee For Service Claims .............................................................................................. 24
    Per Diem Claims ........................................................................................................ 25

MEDICAID RECOVERY DECLINED BY $4.3 MILLION IN THE FIRST QUARTER OF
    FISCAL YEAR 2002 WHEN COMPARED WITH MEDICAID REVENUE RECOVERED
    DURING THE SAME PERIOD IN FISCAL YEAR 2001 ......................................... 28

DCPS' OCFO FAILED TO TIMELY DEPOSIT $1.5 MILLION IN REIMBURSEMENTS
    RECEIVED FROM MEDICAID DURING THE FIRST QUARTER OF
    FISCAL YEAR 2002 .................................................................................................. 30

CONCLUSION .................................................................................................................. 31

# EXECUTIVE SUMMARY

## *PURPOSE*

Pursuant to Public Law 93-198, Section 455, and a joint request from Councilmember Kevin Chavous, Chairperson, and Councilmember Phil Mendelson, Member, Committee on Education, Libraries and Recreation, Council of the District of Columbia, the District of Columbia Auditor reviewed the operations of the Medicaid Recovery Unit within the Office of the Chief Financial Officer of the District of Columbia Public School System (DCPS OCFO) for fiscal years 2001 and 2002, through February 15, 2002.

## *CONCLUSION*

The DCPS OCFO's Medicaid Recovery Unit (MRU) was established to maximize the recovery of the Medicaid reimbursable cost of providing health related services to students in special education programs within the D.C. Public School system. The Auditor found that the MRU did not properly and effectively manage the Medicaid recovery operations for D.C. Public Schools because of the lack of sustained leadership and inadequate staff and other resources. Overall, the Auditor found that the operations of the MRU were adversely affected by ineffective management and constant turnover of leadership in the DCPS CFO and Deputy CFO positions, a reduction-in-force, staff terminations, resignations of numerous DCPS OCFO staff, and a lack of effective management direction and resources provided by DCPS. During the audit period, an ineffective MRU operation resulted in poor oversight and performance of DCPS' Medicaid recovery efforts (also known as revenue maximization efforts).

As a consequence, DCPS accumulated at least $6.6 million in unresolved denied claims from inception of the billing contract in fiscal year 1999 through February 15, 2002. The Auditor's test of denied claims revealed that approximately 18 % of the 99,000 claims could have been easily resolved and reimbursements received if the MRU had periodically performed claim reconciliations. Some claims denied on the basis that the students were ineligible for Medicaid on the dates of service were, in fact, reimbursable because the Auditor found that the students were eligible at the time. Further, some claims were denied because the spelling of students' names on the claims did not exactly match the spelling in the Medicaid eligibility file. Information in the Department of Human Services' Automated Client Eligibility Determination System confirmed that these students were Medicaid eligible, and the claims could have been paid if the spelling of the students' names had been corrected and the claims resubmitted to Medicaid.

Further, DCPS may have at least an additional $5 million in unrealized Medicaid revenue for the period October 2000 through February 2002, due to the failure of the MRU to fully achieve its goals and effectively implement policies and processes to efficiently obtain Medicaid reimbursement. Further, the Auditor found that revenue realized from Medicaid was $4.3 million less in the first quarter of fiscal year 2002 than during the same quarter of fiscal year 2001. This was due, in part, to the failure of the MRU to effectively implement policies and processes regarding Medicaid reimbursement of costs for transporting students to receive health related services.

Additionally, the Auditor found inadequate documentation in schools' special education records to support health related services provided to students and billed to Medicaid for reimbursement. Moreover, the DCPS administration, including the Office of Special Education and DCPS' Chief Financial Officer, failed to communicate to school principals and staff the importance of their duties and responsibilities to DCPS' Medicaid revenue maximization efforts. These managers also failed to establish a system of accountability at the school level to address school-based functions that support Medicaid revenue maximization efforts.

The Auditor found that adequate documentation of services rendered to special education students was not present in some students files. A test of the adequacy of school records documenting services rendered to special education students revealed that: (1) 22 % of students' files did not contain Individualized Education Programs that prescribed the services indicated on denied claims; (2) 13 % of the students' files did not contain progress notes to justify the services billed on the claims; and (3) some schools maintained the documentation in a haphazard, incomprehensible, and oftentimes incomplete manner. Recordkeeping deficiencies, regardless of their causes, have a substantial financial impact on DCPS through the loss of Medicaid reimbursements as indicated in the Medicaid audits for fiscal years 1996 through 1998. These audits, which were finalized in fiscal year 2001, revealed that $15 million of costs incurred for services rendered to special education students were disallowed for Medicaid reimbursement due to the absence or unavailability of supporting documentation. These disallowed costs contributed to DCPS' deficit for fiscal year 2001. If documentation of services and recordkeeping are not immediately improved, these deficiencies will continue to have an adverse impact upon DCPS' finances in future years.

Finally, the Auditor found that DCPS' OCFO staffing, internal controls and procedures were inadequate to provide the timely deposit of $1.5 million of Medicaid revenue during the first quarter of fiscal year 2002.

## *MAJOR FINDINGS*

1. The MRU's failure to become fully functional impedes recovery of at least an additional $5 million in Medicaid reimbursements for the period October 2000 through February 2002.

2. Improperly maintained records throughout the school system may cause DCPS to lose future Medicaid revenue.

3. Insufficient Medicaid claim reconciliations resulted in $6.6 million in denied claims that may yield additional revenue.

4. Medicaid recovery declined by $4.3 million in the first quarter of fiscal year 2002 when compared with Medicaid revenue recovered during the same period in fiscal year 2001.

5. DCPS' OCFO failed to timely deposit $1.5 million in reimbursements received from Medicaid during the first quarter of fiscal year 2002.

## *MAJOR RECOMMENDATIONS*

1. The Chief Financial Officer of the District of Columbia should extend the existing revenue maximization contract until the MRU is fully staffed and operational to prevent further disruption of DCPS' Medicaid recovery process. After the MRU is fully operational, the DCPS Chief Financial Officer (CFO) should immediately audit the contractor's records and bring the Medicaid billing system and all related records in-house.

2. The DCPS CFO should immediately hire an MRU director with, at a minimum, extensive knowledge of Medicaid rules and regulations, special education experience, and experience in administering an effective Medicaid recovery operation.

3. The DCPS CFO should establish an MRU staffing plan and hire staff with the requisite qualifications necessary to successfully develop and operate an effective MRU, and provide ongoing staff training and other resources necessary to ensure the MRU's success.

4. The DCPS CFO should develop performance standards, measures and annual performance plans for the MRU and implement the mechanisms necessary to accurately measure the MRU's accomplishments, and timely identify and correct deficiencies that hamper successful achievement of performance goals, standards, and measures.

5. The DCPS CFO and Superintendent should upgrade computer systems and information management technology within the MRU to facilitate management of Medicaid data currently generated by the Department of Health's Medical Assistance Administration (MAA) and to facilitate building an infrastructure to bring the Medicaid billing system in-house.

6. The DCPS CFO should ensure that the MRU's access to MAA's Medicaid Management Information System (MMIS) includes linking DCPS' billing system to the MMIS in order to automate verification of student Medicaid enrollment before claims are submitted for Medicaid reimbursement.

7. The DCPS CFO should obtain support from the Board of Education, Superintendent, and other DCPS officials to assist in providing clear direction to school principals, administrators, and staff in support of the Medicaid outreach and application policies and procedures.

8. DCPS' Board of Education and Superintendent, in conjunction with other accountable DCPS officials, should designate a position in the Office of Special Education as the Medicaid liaison between the Office of Special Education and the MRU to facilitate the timely flow of accurate information between the two offices.

9. The DCPS CFO and Superintendent should immediately establish the determination of Medicaid eligibility as a required component of the initial special education assessment process and subsequent Individualized Education Program (IEP) development, evaluation, and reevaluation processes conducted by the Office of Special Education. Medicaid eligibility determinations could be verified by an MRU employee specifically assigned this responsibility.

10. The Medicaid eligibility application policy, which must be established to accomplish the MRU's stated goals, should require the implementation of outreach efforts by DCPS to inform parents of the availability of Medicaid and the benefits that would

accrue to their child. This outreach should be conducted at initial special education assessment meetings and reiterated in the special education handbook for parents. A copy of the Medicaid application and instructions should be included in the handbook.

11. The Medicaid application policy should also require each school to obtain and distribute Medicaid information and applications to parents and guardians of special education students registered to attend school. Schools could obtain the student's Medicaid identification number which could then be used to verify Medicaid eligibility of the student as of the date of registration.

12. The DCPS CFO should provide the MRU with necessary resources such as qualified employees, training, supplies and computer equipment to resume monitoring schools' files to ensure that proper records and documentation are obtained and maintained for Medicaid enrolled special education students.

13. The DCPS CFO or the Director of the MRU, when one is hired, should establish written policies and procedures for effectively and timely performing periodic, ongoing monitoring of special education students' school records.

14. DCPS' Board of Education, Superintendent, and other accountable managers should develop and implement policies, procedures, and effective measures of accountability to ensure that student files are regularly reviewed for completeness and that adequate documentation is retained when students transfer between schools.

15. DCPS' Board of Education, Superintendent, and accountable managers should establish and implement written policies and procedures requiring school principals, special education coordinators, special education service providers, and other appropriate school administrative staff to ensure that students' special education files are properly maintained with appropriate IEPs and adequate documentation of services rendered to special education students. Language in agreements with contract providers must include mandatory recordkeeping requirements. The policy should offer incentives to schools and staff to encourage proper, complete file maintenance, and ensure that all services rendered are fully documented. There should also be established effective accountability measures for any failure to do so.

16. DCPS' Board of Education, Superintendent, and other accountable managers should ensure that a Medicaid recovery incentive program is implemented that offers incentives to providers to submit accurate, complete and timely billing information to the MRU, and imposes penalties or other measures of accountability when they fail to do so.

17. The DCPS CFO and the Assistant Superintendent for Special Education should jointly develop and implement mechanisms necessary to automate the submission of Fee For Service billing encounter data by providers to the MRU, in a manner that strengthens accuracy and imposes consistency in the information received.

18. The DCPS CFO should provide the MRU with sufficient resources such as staff, computer equipment, filing and storage space, and supplies necessary to effectively and efficiently perform the following:

    a. retain copies of Fee For Service billings (until implementation of an automated system) and develop a system to monitor and track Fee For Service claims that are submitted to MAA;

    b. train special education discipline coordinators to screen Fee For Service encounter forms to ensure completeness of pertinent information such as student name, student identification number, service type, and reasonableness of progress notes before submitting the forms to the MRU;

    c. develop a formal filing system and electronic database for the MRU to efficiently maintain files of all claims submitted to MAA;

    d. perform periodic reconciliations between all Medicaid claims submitted and reimbursements received;

    e. immediately research, resolve, and resubmit all existing denied claims;

    f. develop and implement procedures governing timely resolution and re-submission of denied claims; and

    g. maintain efficient, well-organized, and complete files regarding the outcome of the MRU's monitoring activities.

19. The DCPS Superintendent and DCPS CFO should immediately develop and implement policies, procedures, and a data management system to improve and automate the transportation billing process to maximize the recovery of reimbursable transportation costs from Medicaid.

20. The DCPS OCFO should establish and implement policies and procedures that ensure timely deposits of all monies received to safeguard the funds.

21. The District of Columbia OCFO, in connection with the DCPS OCFO, should establish a lockbox to receive Medicaid reimbursement checks.

22. The DCPS CFO should take the necessary measures to ensure that the District of Columbia's Office of Finance and Treasury voids Medicaid reimbursement checks that DCPS does not receive within 60 days after the date of the remittance advice, and issue replacement checks to DCPS within a timely manner.