UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
THE UNITED STATES OF AMERICA        )
ex rel. MICHAEL L. DAVIS,           )
                                    )
            Plaintiffs,             )
                                    )   Case Number: 06-629 (JDB)
      v.                            )
                                    )
THE DISTRICT OF COLUMBIA, et al.,   )
                                    )
            Defendants.             )
_____ )

**SUR-REPLY IN FURTHER OPPOSITION
TO THE DISTRICT OF COLUMBIA'S
<u>MOTION TO DISMISS</u>**

The Court granted leave for Michael L. Davis ("Davis") to file the instant Sur-Reply in further opposition to the District of Columbia's ("District") pending motion to dismiss. In its Reply, the District raised two new issues: first, that an audit report constituted public disclosure of the information underlying Davis' complaint, therefore barring subject matter jurisdiction; and second, that the District's failure to comply with Medicaid recordkeeping regulations does not make those claims "false" within the meaning of the False Claims Act ("FCA"). These assertions are meritless because Davis is an original source of any publicly disclosed information in his FCA complaint, and because all Medicaid providers are required to base their reimbursement claims on auditable financial records in their possession.

More specifically and as the evidence in the discovery and trial phases of this case will show, the District, along with its contractor Maximus Corporation ("Maximus") submitted two Medicaid cost claims for fiscal year 1998 ("FY98"). <u>Neither of these</u>

<u>claims was based on records of services actually provided by the District of Columbia Public Schools ("DCPS"), the entity on whose behalf they were submitted. Neither the District nor Maximus ever had any documentation to support the Maximus Medicaid cost claims/reports</u>. (*See* Complaint ¶¶ 15-20) (Emphasis added.) The District's acceptance of the Maximus' cost claims/reports, its submission of unsupported claims, and its failure to maintain records supporting its claims are obvious violations of Medicaid regulations. 42 C.F.R. §§ 413.20, 413.24.[1] Davis is an original source of the allegations in his Complaint so that, even if these allegations were publicly disclosed (and they were not), the Court retains subject matter jurisdiction. 31 U.S.C.S. § 3730 (e)(4)(A).

None of the novel arguments presented in the District's recent Reply addresses the allegations in the Complaint or the arguments in Davis's Opposition to the Motion to Dismiss. Instead, the District sets up and knocks down a series of straw men, hoping to divert the Court's attention from the legal issue at hand: when read in the light most favorable to Davis, the Complaint and attached Personal Disclosure Statement clearly allege specific violations of the False Claims Act ("FCA"), 31 U.S.C.S. § 3729 *et seq*. *United States v. Bouchey,* 860 F. Supp. 890, 893 (D.D.C. 1994). The District's motion to dismiss should be denied, and the case scheduled for discovery and trial.

---

[1] The cited regulations are Medicare regulations. They are made applicable to the District's Medicaid program by the District's State Medicaid Plan. See DISTRICT OF COLUMBIA MEDICAL ASSISTANCE ADMINISTRATION, STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT § 4.19A.

I.  **Davis' Complaint is Based on the District's False Certification of Compliance With Medicaid Recordkeeping Regulations, Not Its Failure To "Submit" Documentation With Its Cost Claims.**

Creatively, the District now claims that because it is a "continuing provider" as defined by 42 C.F.R. § 413.20, it is not required to submit supporting documentation with its Medicaid cost claims. But Davis' Complaint is not based on the District's failure to *submit* supporting documentation. Davis' Complaint is based on the District's failure to base its cost claim on supporting records as required by 42 C.F.R. § 413.24 (a) and its failure to *maintain* those records as required by § 413.20. (Complaint ¶¶ 9, 16, 19, 20, 30, 41).

While the regulations do not require *submission* of supporting documentation, § 413.20 (a) clearly requires *maintenance* of financial data: that is, providers are required to "maintain sufficient financial records and statistical data for proper determination of costs payable under the program." The regulations further require that cost data must be based on a provider's "financial and statistical records which must be capable of verification by qualified auditors." 42 C.F.R. § 413.24(a). An administrator or chief financial officer must certify compliance with these regulations. 42 C.F.R. § 413.24 (f)(iv). These requirements were not met by the District.

The District attempts to create confusion by conflating two separate sets of documents: (1) the cost claim (or cost report); and (2) the documentation to support the cost claim. The District says that "Davis admits that the District reviewed the cost report…." (District's Reply at 4). This statement is misleading, or in the very least, irrelevant. The District is required to certify that the cost report is "prepared from the books and records of the provider," and that all regulations have been complied with,

3

including the regulatory requirement that the cost report be "based on" this supporting documentation. 42 C.F.R. § 413.24 (a). Again, this requirement was not met by the District.

The District's first FY98 cost claim[2], submitted by Maximus, was not based on data capable of verification by auditors—in fact, as far as Davis knows, it was not based on any data at all, since Maximus was not the DCPS Medicaid contractor for FY98 and had no data to support a cost claim. (Complaint ¶ 16). As for the revised claim submitted in 2002, neither Maximus nor the District had data to support the claim. Specifically, the basic requirements of a Medicaid reimbursement cost claim/report are: (1) verifiable documentation that service was provided to a Medicaid recipient by a Medicaid service provider on a certain date, and a determination of the amount of service provided; and (2) financial documentation in support of (1). District representatives *admitted* that the revised claim had been submitted without a review of any supporting documentation. (Statement at 3)[3]. In submitting the Maximus claims for payment despite its lack of documentation, the District falsely certified compliance with Medicaid regulations.

**II.     The District's False Certification Caused the Government to Pay the Claim Because Certification is a Prerequisite to Payment.**

The District now claims that Davis has failed to plead that the District's false statements caused the government to pay a claim. (District's Reply at 7). First, FCA

---

[2] "First" cost claim refers to the first claim submitted to the District by Maximus, not the original FY98 claim prepared by Davis.

[3] "Statement" refers to the Personal Disclosure Statement of Michael L. Davis attached to the Complaint.

4

plaintiffs are not required to plead causation. *United States ex rel. Fago v. M&T Mortg. Corp.*, 518 F. Supp. 2d 108, 120 (D.D.C. 2007). Second, Davis *has* pled causation. (Complaint ¶¶ 33-34 and 37-38). The District would have the Court believe that the undocumented cost claims and false certification statements that it submitted to the government did not cause the government to pay a claim. (Reply at 7-8). This view is simply unsupportable.

The certification required by § 413.24 is a precondition to payment.[4] *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997); *see also United States ex rel. Siewick v. Jamieson Science & Eng'g, Inc.*, 341 U.S. App. D.C. 459, 214 F.3d 1372, 1376 (D.C. Cir. 2000) (false certification of compliance creates liability when certification is a prerequisite to obtaining a government benefit). The certification confirms that applicable regulations have been complied with. The regulations require, among other things, that claims be based on adequate supporting documentation, and that the provider maintain that documentation in its possession, neither of which can be said to have occurred. 42 C.F.R. §§ 413.20, 413.24.

The first FY98 claim could not have been based on supporting documentation, because Maximus did not have documentation for FY98. (Complaint ¶¶ 14, 16). The revised FY98 claim submitted in 2002 could not have been based on supporting

---

[4] Even if no express certification were required, §§ 413.20 (a) and 413.24 (a) expressly condition payment on compliance with their recordkeeping requirements. In these circumstances, a medical provider should be found to have implicitly certified compliance with the regulations when submitting a claim for payment.
*United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001). Therefore, the Court may find causation if the District submitted a claim while knowing that payment was precluded because of non-compliance with the regulations. *Id.* The District representatives present at a meeting with Davis acknowledged that funds could not be drawn down without documentation, and that they had no such documentation. (Statement at 3).

documentation because, once again, neither the District nor Maximus had maintained the necessary documentation, and therefore could not have reviewed it or based the revised claim on it. (Complaint ¶¶ 18-19). Since the District and Maximus failed to comply with these regulations, but nevertheless certified compliance, their certification was false. Because certification is a precondition to payment, a false certification causes the government to pay a false claim. *Thompson*, 125 F.3d at 902.

The Audit Report cited by the District in its Reply provides a further indication that the recordkeeping requirements are a precondition to payment. The report indicates (in the very passage quoted by the District) that "costs incurred [by DCPS] were disallowed for Medicaid reimbursement *due to the absence or unavailability of supporting documentation.*" (See Reply, Exhibit A at ii) (Emphasis added). Reimbursement would not be disallowed unless the District's recordkeeping obligations are a prerequisite to reimbursement.

In connection with its argument that the false certifications did not cause the government damages, the District also argues that Davis is a co-conspirator in submitting the first false claim for FY98: "if the underlying documentation is false, Davis had a part in its compilation." (District's Reply at 8). But there is no "underlying documentation"— false or otherwise—for the claims submitted by Maximus and the District. Nor does Davis "admit" that the false claim was his "work product," as the District asserts. (District's Reply at 8). Davis' work product was the cost claim that his company prepared for DCPS for FY98, and the documentation to support *that claim*. The District did not submit the claim that Davis prepared for the providers if service (the schools) for Medicaid reimbursement—the District substituted a claim prepared by Maximus, for

6

which there was no supporting documentation. (Complaint ¶¶ 15-16). The District cannot use Davis' documentation, which supports Medicaid reimbursement work performed by Davis, for a Medicaid cost claim developed by another company that has no relationship to Davis or the Davis work product.

As for the revised FY98 claim submitted in 2002, the District claims that Davis is a co-conspirator because the claim was increased to match the Davis' FY98 claim. The fact that the cost report invented by the District and its contractor, Maximus, in 2002 is similar the report prepared by Davis in 1998 does not make Davis a co-conspirator in their fraud.

### III. The District Cannot Base Its Certification on Documents in Davis' Possession.

The District does not constructively possess Davis's records. Even if it did, the District would still not escape FCA liability—the records in Davis' possession support the claim that Davis submitted for approval to the District, *not* the claims submitted by Maximus. Maximus never had access to Davis' documents in order to base its claim on them.

The District explains the duties of an agent with respect to a principal's property, while glossing over the fact that Davis is not the District's agent for purposes of the Maximus FY98 cost claims. On the first page of the memorandum in support of its Motion to Dismiss, the District points out that the contract with Davis for FY98 was adjudicated in a previous proceeding to be void *ab initio* because it violated the Anti-Deficiency Act and *was not signed by the District*. (*See* Motion to Dismiss at 5, n1). This void contract is the same one that the District now relies on to establish the existence of an agency relationship between it and Davis. (Reply at 5).

7

Agency is the relationship created when a principal manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent to act accordingly. RESTATEMENT (THIRD) OF AGENCY, § 1.01. The District never manifested its assent to an agency relationship based on the contract because it never executed the contract. The non-existent agency relationship with Davis is not a basis for the District to claim that it constructively possesses documentation for its fraudulent claims.

Further, the District's claim that it has a right to these records is disingenuous. If the District believed it had a cognizable claim to these documents, it would no doubt have filed an action to recover them—the District has tried and failed to obtain them before. At a meeting with outside counsel for the District, the District's counsel asked Davis to release the records to it. (Statement at 3). Davis refused. In a letter dated February 22, 2002, Mark Back of the District of Columbia Corporation Counsel attempted to persuade Davis's attorney to relinquish the documents. This attempt was unsuccessful. A meeting was held on April 9, 2003 at the office of the District of Columbia Inspector General, where Davis' possession of the documents was discussed. Again, the District failed to obtain these documents. (Mr. Back's letter and a letter from the Inspector General memorializing the April 9, 2003 meeting are attached as Exhibit 1.)

**IV.     The Medicaid Recordkeeping Regulations are Specific and Enforceable.**

The District now argues that it cannot be held liable for its false certification of compliance with the recordkeeping requirements of 42 C.F.R. §§ 413.20 and 413.24 because a regulation requiring "adequate" recordkeeping is too vague to be enforced. (District's Reply at 12). Because the regulations are vague, argues the District, there is

8

no objective standard against which to measure the adequacy of the documentation that it used in preparing its cost reports—so the District's certification that it has maintained adequate records cannot be false.

First, the regulations are not vague—the District's claim that "adequacy" of cost data is a concept that "has not been interpreted by CMS" (Centers for Medicare and Medicaid Services) is simply false. "Adequacy of cost information" is defined in the regulations:

> *(c) Adequacy of cost information.* Adequate cost information must be obtained from the provider's records to support payments made for services furnished to beneficiaries. The requirement of adequacy of data implies that the data be accurate and in sufficient detail to accomplish the purposes for which it is intended. Adequate data capable of being audited is consistent with good business concepts and effective and efficient management of any organization, whether it is operated for profit or on a nonprofit basis. It is a reasonable expectation on the part of any agency paying for services on a cost-reimbursement basis.

42 C.F.R. § 413.24 (c). If this were not enough definition, the CMS Provider Reimbursement Manual ("PRM") offers further explanation.[5] For example, PRM § 2304 explains that adequate cost information is "current, accurate and in sufficient detail to support payments made for services rendered to beneficiaries. This includes all ledgers, books, records and original evidences of cost…which pertain to the determination of reasonable cost, capable of being audited."

Second, courts have had no problem applying these regulations, in or out of the FCA context:

---

[5] A court may look to the PRM for guidance in interpreting and applying the regulations. *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 90 (1995).

9

- The court upheld disallowance of a Medicaid claim where the provider hospital had no records to support the claim; **even where there was no dispute that the services were actually provided**. The hospital's failure to maintain records as required by § 413.20 mandated the disallowance of the claim. *Daviess County Hospital v. Bowen*, 811 F.2d 338, 344 (7th Cir. 1987).

- An FCA defendant's argument that its unsupported Medicaid claim was not false because it was disallowed was without merit. The court reasoned that the ultimate payment or nonpayment of the claim by the government was irrelevant where the regulations place the burden of maintaining appropriate documentation on the provider. *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 447 (6th Cir. Tenn. 2005).

- An FCA defendant who could not produce a general ledger, trial balance or any other accounting records failed to maintain "adequate" financial records for purposes of the regulations. *United States v. Medco Physicians Unlimited*, 2001 U.S. Dist. LEXIS 3468, 6-7 (N.D. Ill. Mar. 22, 2001).

- "[T]he Court notes that the burden has always been on the providers to 'maintain records that are sufficient for proper determination of costs.'" *Presbyterian Med. Ctr. of the Univ. of Pennsylvania Health Sys. v. Shalala*, 1998 U.S. Dist. LEXIS 6254 (D.D.C. Apr. 21, 1998) (citing *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 92-93 (1995) (citing 42 C.F.R. § 413.20 (a))).

Finally, even if it were not clear exactly how much documentation is adequate to satisfy the regulations, it is certainly more than **nothing**—which is exactly what the

District has. By no conceivable measure of adequacy is the District's complete lack of documentation for the FY98 Maximus cost claims acceptable under the regulations.

If the District, in repeatedly asserting that its documentation need only be "adequate" (Reply 10, 11, 13), is saying that it in fact has documentation to support the FY98 Maximus claims, then this goes to the merits of the case; it is a factual issue that has nothing to do with the sufficiency of Davis's pleadings. If the facts as pled in the Complaint are incorrect, and the District does have documentation to support the claims, it can make that documentation available for inspections through discovery.

V.     **Davis Fully Explained His Status as an "Original Source" in His Opposition.**

The District claims that Davis did not argue that he was an original source in his opposition to the motion to dismiss. (District's Reply at 16). This is incorrect. Davis respectfully invites the Court's attention to pages 7-9 of his Opposition, beginning with the section titled "B. Davis was the original source of the information underlying his complaint," for a discussion of the original source doctrine and its applicability to Davis.

Apparently conceding that the Statement of the Case attached to its Motion to Dismiss was not a public disclosure of the facts underlying the FCA Complaint (since it did not disclose those facts and was filed after the FCA Complaint) the District tries again, this time with an incomplete Audit Report from 2002.

In order for a public disclosure to divest the court of subject matter jurisdiction pursuant to 31 U.S.C. § 3730 (e)(4)(A), either the allegations of fraud or the essential elements of fraud must be made public, such that a stranger to the transaction would be able to determine that a fraudulent transaction had taken place. The District of Columbia Circuit has explained the concept this way:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.,* the conclusion that fraud has been committed….Many potentially valuable *qui tam* suits would be aborted prematurely by a reading of the jurisdictional provision that barred suits when the only publicly disclosed information was itself innocuous. In terms of the mathematical illustration, when X by itself is in the public domain, and its presence is essential but not sufficient to suggest fraud, the public fisc only suffers when the whistle-blower's suit is banned.

*United States ex rel. Springfield Terminal Ry. v. Quinn*, 304 U.S. App. D.C. 347, 14 F.3d 645, 654 (D.C. Cir. 1994).

As for the first FY98 cost claim submission, the Audit Report makes no allegation of fraud with respect to this or any other specific claim. It discusses the lack of documentation for FY98 only briefly, indicating that in FY96 through FY98, $15 million in Medicaid reimbursements were disallowed for lack of documentation. It does not reveal the specific claim at issue in this case, or whether any part of that $15 million disallowance is attributable to this claim. This disclosure is innocuous—it does not suggest fraud to an outsider unfamiliar with the transaction.

Assuming, *arguendo*, that the Audit Report does disclose the elements of fraud, the court would nevertheless have subject matter jurisdiction over this action, because Davis is an original source of the information in his Complaint. 31 U.S.C. § 3740(e)(4)(B). An original source is one who has direct and independent knowledge of the information in underlying his suit, which he voluntarily discloses to the government prior to filing the suit. *Id*. Davis has direct and independent knowledge of the District's and Maximus' lack of documentation for both the original and the revised FY98 DCPS claims—information based on his dealings with the District and his own possession of

12

the documentation.  (*See* Statement at 2).  He voluntarily provided this information to the Department of Health and Human Services and the United States Attorney General prior to filing his suit. (*See* Opposition at 8, and Exhibits 1 and 2).  The same rationale that establishes Davis as an original source with respect to the Statement of the Case previously submitted by the District establishes him as an original source with respect to the Audit Report.  In fact, it does not matter how many documents the District submits, alleging public disclosure of the information in Davis' suit—Davis is an original source of that information, and the Court retains subject matter jurisdiction over this claim.

**VI.     The Purpose of Medicaid is to Reimburse Health Care Providers,
         Not Enrich the District's General Fund.**

The purpose of the Medicaid program is to reimburse providers for the actual cost of providing services to beneficiaries. *See* 42 C.F.R. §§ 413.20 (c)(2) and 413.9 (a).  The program seeks to avoid shifting the cost of services to non-Medicaid patients, or of making Medicaid payments for non-eligible services.  *See Daviess County Hospital*, 811 F.2d at 347 (quoting 42 U.S.C. § 1395x(v)(1)(A): "the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs"). The District of Columbia is not the provider of the services in the cost claim, DCPS is. The point of the program is to reimburse DCPS for expenses actually incurred in providing special education students with eligible services—not to augment the District's treasury or benefit other government programs unrelated to the provision of Medicaid services.  In denying DCPS reimbursement for the expenses it incurred in providing these

13

services, the District shifted the cost of those services from the Medicaid program to other sources.  This is contrary to the purpose of the program, and in violation of the regulations.

**VII.    The Complaint Clearly Pleads All Required Elements of an FCA Claim.**

Davis has not asked the Court to "draw an inference of fraud." (District's Reply at 19).   In response to the District's erroneous belief that Davis' claim fails because certain facts are pled on information and belief, Davis observed that the "Complaint and the Personal Disclosure Statement provide a sufficient basis for the court to infer that Davis *will be able to produce evidence* on the essential elements of the fraud claim." (Opposition at 12).  The District persists in this belief, and it is still erroneous.  This Circuit allows *qui tam* plaintiffs to plead facts on information and belief when those facts are in the control of the other party.  *United States ex rel. Williams v. Martin-Baker Aircraft Co*., 363 U.S. App. D.C. 419, 389 F.3d 1251, 1258 (2004).  The exact circumstances of the claims submissions are not available to Davis—the District controls this information.   This is precisely why at this stage, the District's motion to dismiss should be denied and the case scheduled for discovery and trial.

The District's reliance on the case from the Southern District of Florida, *U.S. ex rel. Feingold v. Palmetto Gov't Benefits Administrators*, 477 F. Supp. 2d 1187 (S.D. Fla. 2007) is misplaced.  The case does not hold that a *qui tam* plaintiff may not plead facts on information and belief, it simply holds that the plaintiff must state a "reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id*. at 1194.

Davis does provide the "reason for his belief" that the FY98 Maximus claims were submitted in his Personal Disclosure Statement. Davis personally attended two meetings attended by various District representatives, including: Deputy Mayor Erik S. Gaull, DCPS CFO Don Rickford, representatives of the District's Medicaid auditors, a representative from DCMAA, as well as attorneys from the District Corporation Counsel. The FY98 cost claim submissions were discussed at these meetings. (Statement at 2-3). At the second meeting, the District representatives acknowledged that they had already taken a drawdown on the revised claim. (Statement at 3). The allegations in the Complaint come from two sources: Davis' personal knowledge of events and statements of individuals (including those named above) with personal knowledge of those events. (Statement at 1). Given Davis' extensive communications regarding the submission of the FY98 Maximus claims with the District, the fact of their submissions is not a mere "assumption."

As for the District's statement that the Complaint fails to assert that a revised claim was submitted in 2002 for FY98 (District's Reply at 20), this is simply wrong. (*See* Complaint ¶¶18, 20 and Statement at 2.)

## CONCLUSION

The new arguments presented in the District's Reply are its attempt to distract the Court from the two issues before it: (1) whether the Court has subject matter jurisdiction over this action; and (2) whether Davis' Complaint states a claim. As discussed above, Davis is an original source of the information in his Complaint. After two attempts, the District has failed to establish before the Court a public disclosure of his allegations.

After first arguing in its motion that Davis failed to plead the elements of fraud, the District now takes a different approach. The District's new arguments boil down to this: that it is entitled to invent cost claims based on documentation it has never reviewed or possessed; that its complete lack of documentation is "adequate" for purposes of the Medicaid reimbursement regulations; that its false certification of compliance with Medicaid regulations does not expose it to FCA liability because recordkeeping regulations do not apply to the District; and that the regulations are too vague to be enforced anyway. These arguments do not address the adequacy of Davis' complaint. Rather, they demonstrate nothing more than a cavalier disregard for the Medicaid regulations and a belief that the District is above the law.

For the foregoing reasons, and the reasons discussed in his Opposition, Davis respectfully requests that the Court deny the District's Motion to Dismiss.

Dated: June 17, 2008                                    Respectfully submitted,

                                                           _Curtis Boykin_____
Frederick A. Douglas, DC Bar 197897
Curtis A. Boykin, DC Bar 444120
DOUGLAS & BOYKIN PLLC
1850 M Street NW, Ste. 640
Washington, DC 20036
202.776.0370 (ph)
202.776.0975 (fx)

CERTIFICATE OF SERVICE

This is to certify that on this 17th day of June, 2008, true copies of the foregoing Sur-Reply in Further Opposition to the District of Columbia's Motion to Dismiss were served via electronic transmission through the electronic case filing system upon counsel for the named parties.

                                              /s/
                                          Curtis A. Boykin