UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>ex rel.</u> MICHAEL L. DAVIS, <br><br>       Plaintiff, <br><br>         v. <br><br> DISTRICT OF COLUMBIA and the DISTRICT OF COLUMBIA PUBLIC SCHOOL SYSTEM, <br><br>       Defendants. | Civil Action No.  06-0629 (JDB) |

## MEMORANDUM OPINION

The District of Columbia and the District of Columbia Public School System (collectively, "defendants") have filed a motion to dismiss this False Claims Act ("FCA") suit filed by relator Michael L. Davis ("plaintiff" or "relator") on behalf of the United States.  Plaintiff alleges that defendants violated the FCA by submitting a claim for Medicaid reimbursement without maintaining documentation adequate to support that claim.  Defendants seek to dismiss plaintiff's Complaint, claiming a lack of subject matter jurisdiction, failure to plead fraud with particularity, and failure to state a claim upon which relief can be granted.  Defendants also seek to dismiss the District of Columbia Public School System ("DCPS") as a defendant.  For the reasons below, defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The recitation of facts is primarily taken from plaintiff's Complaint ("Compl.").  Plaintiff is the chairman, president, and chief executive officer of Davis & Associates ("D&A").  Compl. ¶ 4.  In 1995, D&A was awarded a contract to develop and implement a Medicaid Reimbursement

Recovery program for defendants' special education program.  Id. ¶ 10.  Under the contract, D&A

collected data and prepared documentation necessary to support Medicaid reimbursement claims

("cost claims").  Id. ¶ 11.  D&A's contract was not renewed at the end of 1998; instead,

defendants hired Maximus Corporation ("Maximus") to prepare cost claims.  Id. ¶ 12.

Nevertheless, D&A prepared a $60 million cost claim, along with the documentation to support

it, for the 1998 fiscal year.  Id. ¶ 13.  D&A sent the cost claim to the appropriate District of

Columbia agency and retained all of the supporting documentation.  Id. ¶ 14.

Defendants initially did not submit D&A's $60 million cost claim to the federal

government for reimbursement; rather, defendants sought reimbursement on an $8 million cost

claim prepared by Maximus.  Id. ¶ 15.  D&A learned about the $8 million claim and advised

defendants that they were in fact owed $60 million.  Id. ¶ 16.  Plaintiff offered to turn the

documentation over to defendants for some (unknown) compensation.  See Personal Disclosure

Statement of Michael L. Davis ("Personal Disclosure Statement") at 3-4.  Defendants declined,

yet in March 2002, they submitted a revised cost claim for $60 million.  Compl. ¶ 18; Personal

Disclosure Statement at 2.  The U.S. Treasury paid the $60 million claim.  Compl. ¶ 21.

According to plaintiff, because D&A had retained the documentation supporting the $60 million

claim, the revised claim lacked adequate supporting documentation.  Id. ¶¶ 19-20.  Plaintiff

alleges that submitting a cost claim without maintaining supporting documentation violates

Medicaid cost reimbursement regulations.  Id. ¶ 20.

Plaintiff filed this qui tam complaint on April 4, 2006, alleging that defendants' actions

constitute a violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.  Before filing

suit, plaintiff notified both the U.S. Department of Health and Human Services and the U.S.

Department of Justice of defendants' purported actions.  See Memorandum in Opposition to the

District of Columbia's Motion to Dismiss ("Davis Opp.") at Ex. 1 & 2.  Plaintiff also adhered to

FCA procedures requiring qui tam claims to be filed under seal to allow the United States to

intervene and prosecute the action itself.  On October 24, 2007, the United States declined to

intervene and asked that plaintiff be allowed to prosecute the suit as a relator.  See Government

Notice of Election to Decline Intervention.  Defendants filed this motion to dismiss on April 4,

2008.

### STANDARD

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over

the subject matter or for failure to state a cause of action, the allegations of the complaint should

be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see

Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips

v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must

be presumed true, and the plaintiff must be given every favorable inference that may be drawn

from the allegations of fact.  Scheuer, 416 U.S. at  236; Sparrow v. United Air Lines, Inc., 216

F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal

conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set

out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has

jurisdiction.  See U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000);

see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C.

2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its

jurisdictional authority."). "'[P]laintiff's factual allegations in the complaint . . . will bear closer

scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a

claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, a court may consider

material other than the allegations of the complaint in determining whether it has jurisdiction to

hear the case, as long as it still accepts the factual allegations in the complaint as true.  See

Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); E.E.O.C. v. St.

Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad.

of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

 In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all

that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355

U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per

curiam).  "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint."  Browning v.

Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Thus, the complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp., 127 S. Ct. at 1965

(citations omitted).

## ANALYSIS

I.  Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction in this case because plaintiff's suit is based on a publicly-disclosed transaction.  Courts lack jurisdiction over qui tam FCA actions based on publicly-disclosed transactions unless the relator is an "original source." 31 U.S.C. § 3730(e)(4)(A).  Defendants argue that two public disclosures bar the current suit from proceeding.  First, defendants argue that another case filed by plaintiff, a discrimination case arising out of the same relationship between plaintiff and defendants, constitutes a public disclosure.  See Davis & Assoc., Inc. v. District of Columbia, 501 F. Supp. 2d 77 (D.D.C. 2007) (Kessler, J.).  Although civil litigation may constitute a public disclosure, see United States ex rel. Springfield Terminal Rwy. Co. v. Quinn, 14 F.3d 645, 652 (D.C. Cir. 1994), plaintiff's discrimination case does not divest this Court of subject matter jurisdiction over plaintiff's FCA claim.  Plaintiff's discrimination case was filed on May 24, 2006 -- more than seven weeks after plaintiff filed the current suit.  It is long established that "the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events."  Mollan v. Torrance, 22 U.S. 537, 539 (1824).  Because the present suit was filed before the discrimination case, the discrimination case poses no jurisdictional bar.

The second supposed public disclosure is a 2002 District of Columbia audit "reveal[ing] that $15 million of costs incurred for services rendered to special education students were disallowed for Medicaid reimbursement [in fiscal years 1995 through 1998] due to the absence or

unavailability of supporting documentation."  See Defendants' Reply to Opposition to Motion to

Dismiss ("Def. Rep.") at 17.  In Springfield Terminal, the D.C. Circuit set out the following

framework to determine whether a public disclosure is sufficient to bar jurisdiction:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its
> essential elements.  In order to disclose the fraudulent transaction publicly, the
> combination of X and Y must be revealed, from which readers or listeners may
> infer Z, i.e., the conclusion that fraud has been committed.  The language
> employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit qui tam
> actions only when either the allegation of fraud or the critical elements of the
> fraudulent transaction themselves were in the public domain.

14 F.3d at 654.  Under this framework, the 2002 audit publicly disclosed the heart of plaintiff's

FCA claim (i.e., Z):  that defendants submitted claims for reimbursement without maintaining

supporting documentation in fiscal year 1998.  Therefore, the Court only has jurisdiction over

this suit if plaintiff qualifies as an original source.[1]

A relator is an original source if the relator (1) has firsthand direct and independent

knowledge of the underlying facts and (2) voluntarily divulges those facts to the government

before filing suit.  31 U.S.C. § 3730(e)(4)(A); see also Rockwell Int'l Corp. v. United States, 127

S.Ct. 1397, 1405 (2007).  Knowledge is "direct" if it is acquired through the relator's own efforts

(i.e., without an intervening agency).  Springfield Terminal, 14 F.3d at 656.  Knowledge is

"independent" if the relator would have had it absent the public disclosure.  Id.  A relator need

---

[1] The Court is aware of the pending petition for a writ of certiorari in Graham County Soil and Water Conservation District v. United States ex rel. Wilson, No. 08-304 (filed Sept. 5, 2008).  Graham County presents the question whether a state audit can constitute a "public disclosure" under section 37320(e)(4)(A).  Even if the Supreme Court accepts the case and decides that a state audit may not constitute a public disclosure, the outcome of the jurisdictional analysis in the current case remains the same.  As discussed infra, plaintiff qualifies as an "original source" and therefore overcomes the public disclosure jurisdictional bar.

not have direct and independent knowledge of all elements of the transaction.  Id. at 657.  Rather,

if a relator has direct and independent knowledge of some essential element of the allegedly

fraudulent transaction (i.e., either X or Y under the Springfield Terminal framework), then the

relator qualifies as an original source.

Plaintiff qualifies as an original source because he has direct and independent knowledge

of an essential element of his claim:  that defendants lacked documentation for the cost claim.

Under the Springfield Terminal framework, the alleged false claim (i.e., Z) is comprised of two

elements: defendants lacked documentation (i.e., X) and defendants nevertheless submitted a

claim (i.e., Y).  Plaintiff has direct and independent knowledge of X because plaintiff alleges that

D&A was the only entity that could have created the necessary documentation and because D&A

has never given that documentation to anyone.  See Davis Opp. at 7.  Moreover, plaintiff has

demonstrated that he voluntarily divulged his direct and independent knowledge to the relevant

government agencies.  In his Opposition, he appended letters to the Justice Department and the

Department of Health and Human Services.  See Davis Opp., Exhibits 1 & 2.  These letters

demonstrate that plaintiff not only filed the statutorily-required disclosure statement with the

government before filing suit, but that he also provided the government with "the essential

elements or information on which the qui tam allegations are based."  See United States ex rel.

King v. Hillcrest Health Ctr., Inc., 264 F.3d 1271, 1280 (10th Cir. 2001).  Because plaintiff has

direct and independent knowledge of an essential element of the claim, and because he

voluntarily disclosed that information to the government, the Court has jurisdiction in this case.

II.  Failure to Plead with Particularity

Defendants also argue that plaintiff's suit must be dismissed for failure to plead with particularity.  A plaintiff in a FCA case "must show: (1) the existence of a request for payment, and (2) that this request was fraudulent."  United States v. Bouchey, 860 F. Supp. 890, 892 (D.D.C. 1994) (citing United States ex rel. Glass v. Medtronic, 957 F.2d 605, 608 (8th Cir. 1992)).  Although a plaintiff need not allege the existence of a request for payment with particularity, Federal Rule of Civil Procedure 9(b) applies to the claim that the request was fraudulent.  Id. at 892.  Under Rule 9(b), the plaintiff "must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud."  United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (citing 2A J. Moore, Federal Practice P. 9.03, at 9-20 to 9-24 (2d ed. 1980)).  The plaintiff must also state which individual made the misrepresentation.  Id.  These heightened pleading requirements are necessary

> to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude. The need for this protection is especially acute where . . . [the] defendant is an elected official whose reputation and position are particularly vulnerable to accusations of wrongdoing.  And because "fraud" encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response.

Id.

As a general rule, pleadings made upon "information and belief" do not satisfy Rule 9(b)'s particularity requirement.  See Bender v. Rocky Mtn. Drilling Assoc., 648 F. Supp. 330, 335-36 (D.D.C. 1986) (citing Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972)).  Courts make an

exception in qui tam suits, however, because defendants often control the information that would

otherwise be necessary to satisfy Rule 9(b).  United States ex rel. Williams v. Martin-Baker

Aircraft Co., Ltd., 389 F.3d 1251, 1258 (D.C. Cir. 2004).  A relator invoking this exception must

plead a lack of access to necessary information in the complaint.  Id.

Defendants take aim at plaintiff's allegation of when the alleged fraud occurred.

Memorandum in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 22.  Plaintiff

alleges in his complaint that a false claim was submitted "in or about the Spring of 2002."

Compl. ¶ 18.  Defendants argue that this allegation is too general under Williams, 389 F.3d at

1257.  See Def. Mem. at 21-22.  In Williams, the D.C. Circuit held that an allegation that fraud

continued "at least through 2002" was "entirely inadequate."  Williams, 389 F.3d at 1257.  But

the Williams court's primary concern was how open-ended the allegation was; the plaintiff in that

case never alleged when the fraud began.  Here, plaintiff has alleged that there was a single

fraudulent act in the spring of 2002, not a series of fraudulent acts that began at some point and

ended sometime over the course of a year.  Moreover, plaintiff incorporated by reference a

Personal Disclosure Statement, Compl. at ¶ 4, which specifically alleges that the false claim was

submitted in March 2002.[2]  See Personal Disclosure Statement at 2.  Plaintiff, therefore, has

adequately alleged the time of the false representation.

A careful examination of plaintiff's complaint and the accompanying Personal Disclosure

Statement satisfies the Court that the remaining requirements of Rule 9(b) are satisfied as well.

---

[2] On a motion to dismiss for lack of jurisdiction, a court may consider documents
incorporated into a complaint.  See Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 183 (D.C.
Cir. 2006); E.E.O.C. v. St. Francis Xavier Parochial School, 117 F.3d 621, 624-25 (D.C. Cir.
1997).

Plaintiff alleges that the cost claim is false because defendants lacked adequate supporting documentation.  Compl. ¶¶ 30-32.  Plaintiff also alleges that defendants gained $60 million because of the false claim.  Id. ¶ 18.  Finally, plaintiff identifies two individuals -- Erik S. Gaull, Director of the Operational Improvements Division, and Don Rickford, Chief Financial Officer for DCPS -- who supposedly knew that the claim was made without supporting documentation but took no steps to correct it.  Id. ¶ 17.  Although plaintiff uses the phrase "upon information and belief" several times in his complaint, see id. ¶¶ 15, 18-19, and 21, the actual basis of plaintiff's allegations is stronger.  As plaintiff describes in his Personal Disclosure Statement, he had several meetings with defendants that confirmed the facts forming the basis of this suit.  For these reasons, plaintiff has pleaded with sufficient particularity.

III.  Failure to State a Claim

Defendants argue that plaintiff's complaint nonetheless fails to state a claim upon which relief can be granted.  The FCA "imposes two sorts of liability.  First, the submitter of a 'false claim' or 'statement' is liable for a civil penalty, regardless of whether the submission of the claim actually causes the government any damages; even if the claim is rejected, its very submission is a basis for liability.  Second, the submitter of the claim is liable for damages that the government sustains because of the submission of the false claim."  United States ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 199 (D.C. Cir. 1995).  The first question, therefore, is whether plaintiff has stated a claim that defendants submitted a "false claim."  Absent a false claim, there can be no liability at all.

Defendants contend that their cost claim could not have been false.  According to defendants, Medicaid reimbursement regulations do not require "continuing providers" seeking

reimbursement to submit accompanying documentation.  Because they are continuing providers,

the argument goes, their failure to submit such documentation cannot form the basis of plaintiff's

complaint.  Def. Rep. at 3-5; 10-11; 13-14.  But plaintiff does not allege that defendants' failure

to submit supporting documentation constitutes a false claim; rather, plaintiff alleges that

defendants' failure to maintain such documentation violates the Medicaid regulations.

Plaintiff is correct that the Medicaid regulations require all parties seeking reimbursement

to maintain supporting documentation.[3]  A party seeking reimbursement must maintain financial

data to support the cost claim.  42 C.F.R. § 413.20(a).  That financial data must be based on

audit-quality records.  Id. § 413.24(a).  Moreover, the party seeking reimbursement must certify

compliance with these requirements.  Id. § 412.24(f)(iv); see also United States ex rel. A+

Homecare, Inc. v. Medshares Mgmt. Group, Inc., 400 F.3d 428, 447 (6th Cir. 2005) (holding that

reimbursement "regulations require that providers maintain sufficient financial records and

statistical data for proper determination of costs payable under the program.  Moreover, the cost

reports submitted to the intermediaries must provide adequate cost data capable of verification by

qualified auditors.") (internal citations, quotations, and ellipsis omitted).

Nevertheless, defendants insist that they have maintained adequate supporting

documentation.  Defendants rely on an agency theory: because plaintiff prepared the supporting

documentation on behalf of the District, the argument goes, the District has legal possession of it.

But defendants cannot succeed on that argument because they have already succeeded in

persuading another member of this Court to find that the very contract that would have created an

---

[3] The cited Medicare regulations are made applicable to the District of Columbia's Medicaid program by the District's State Medicaid Plan.  See District of Columbia Medical Assistance Administration, State Plan Under Title XIX of the Social Security Act § 4.19A.

express agency relationship was void <u>ab initio</u>.[4]  <u>See</u> <u>Davis & Assoc., Inc. v. District of</u>

<u>Columbia</u>, 501 F. Supp. 2d 77, 80 (D.D.C. 2007) (Kessler, J.).  Because the Medicaid regulations

require parties seeking reimbursement to maintain adequate documentation, and because plaintiff

has alleged that all of the documentation is in plaintiff's possession, plaintiff has adequately

alleged that defendants submitted a false claim.

Plaintiff has not, however, alleged that the false claim has caused damage to the

government.  <u>See</u> <u>Schwedt</u>, 59 F.3d at 199.  No reading of plaintiff's Complaint, no matter how

generous, reveals an allegation of damages.  According to plaintiff, defendants were entitled to

receive $60 million in Medicaid reimbursement.  Compl. ¶¶ 13, 16.  And, again according to

plaintiff, defendants submitted a $60 million cost claim.  <u>Id.</u> ¶ 18.  Unless plaintiff himself falsely

inflated the reimbursement figure -- which the Court will assume he did not -- the government

paid what the plaintiff says the government owed.  Nor does plaintiff's allegation that defendants

improperly directed the $60 million reimbursement into the District's general treasury account

amount to an allegation of damage to the government.

Absent damage to the government, plaintiff has alleged just the first type of liability

outlined in <u>Schwedt</u> -- the submission of a false claim.  59 F.3d at 199.  Only statutory penalties

are available for this kind of liability.  <u>Id.</u>; <u>see also</u> 31 U.S.C. § 3729(a) (setting "a civil penalty of

not less than $5,000 and not more than $10,000" for submission of a false claim).  To the extent

defendants seek to dismiss plaintiff's claim for statutory penalties, the motion is denied.  But

defendants' motion to dismiss plaintiff's claim for treble damages is granted because plaintiff has

---

[4] Defendants may have legal possession of the documentation based on an <u>implied</u> agency
theory, but that question is not before the Court and hence the Court offers no opinion on it.

not alleged any damage to the government.

IV.  Failure to State a Conspiracy Claim

Count II of plaintiff's complaint alleges that the "Defendants conspired with others to defraud the United States Government by inducing the United States Government to pay or approve false or fraudulent claims" and that "[b]y reason of the payments or approvals, the United States Government has been damaged, and continues to be damaged, in substantial amount."  Compl. ¶¶ 38-39.  Conspiracy claims under the FCA fall under section 3729(a)(3). "To state a claim under § 3729(a)(3), the government must show: (1) that defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim."  Bouchey, 860 F. Supp. at 893.  Leaving aside the first two elements, plaintiff cannot succeed on his conspiracy claim because, once again, he has not alleged that the United States has suffered damage as a result of the alleged false claim.  As discussed supra, plaintiff claims that the government owed defendants $60 million and that the government paid defendants $60 million.  Compl. ¶¶ 13, 16, 18.  Therefore, defendants' motion to dismiss count II of the Complaint is granted.

V.  DCPS Cannot be Sued

Defendants argue that DCPS is non sui juris -- i.e., that DCPS may not be sued as a separate entity.  Ample precedent supports defendants' argument.  See, e.g., Parker v. District of Columbia, 599 F. Supp. 518, 522-23 (D.D.C. 1983); see also Kundrat v. District of Columbia,

106 F. Supp. 2d 1, 7 (D.D.C. 2000) (collecting cases).[5]  DCPS is not a suable entity under the

D.C. Code.  See Kelley v. Morris, 400 A.2d 1045, 1047 (D.C. 1979).  Therefore, plaintiff's

complaint is dismissed to the extent it seeks to recover damages from DCPS.

## CONCLUSION

For these reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is

denied; defendants' motion to dismiss for failure to plead with particularity is also denied; and

defendants' motion to dismiss count I is granted in part.  Plaintiff has adequately alleged the

existence of a false claim; therefore, defendants' motion to dismiss plaintiff's claim for statutory

penalties is denied.  However, plaintiff has not alleged the requisite damage to the federal

government; therefore, defendants' motion to dismiss plaintiff's claim for treble damages is

granted.  Defendants' motion to dismiss count II, plaintiff's conspiracy claim, is granted.  Finally,

defendants' motion to dismiss DCPS as a defendant is granted insofar as plaintiff seeks damages

from DCPS.  A separate Order has been issued on this date.

/s/
JOHN D. BATES
UNITED STATES DISTRICT COURT

Date: December 23, 2008

---

[5] Although plaintiff cites to Stewart v. District of Columbia Armory Board, 863 F.2d 1013 (D.C. Cir. 1988), where the court permitted a case against an independent entity (the Armory Board) to proceed, that case involved a plaintiff seeking declaratory and injunctive relief to vindicate First Amendment claims.  Constitutional claims, and complaints seeking injunctive relief rather than damages, may often proceed against entities that otherwise are not amenable to suit.  Cf. Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 697-99 (1978).