## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **UNITED STATES OF AMERICA, <u>ex rel.</u> MICHAEL L. DAVIS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>**Defendant.** |

**Civil Action No. 06-0629 (JDB)**

### MEMORANDUM OPINION

Plaintiff Michael L. Davis ("plaintiff" or "relator") brings this <u>qui tam</u> action on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729 <u>et seq.</u> ("FCA" or "the Act"), alleging that the District of Columbia ("the District" or "defendant") and the District of Columbia Public Schools ("DCPS") violated the Act by submitting a Medicaid reimbursement claim for fiscal year 1998 without maintaining adequate supporting documentation. Presently before the Court are [87] plaintiff's motion for summary judgment, and [88] the District's motion to dismiss or, in the alternative, for summary judgment. Because plaintiff's claims are based upon a "public disclosure" and plaintiff does not qualify as an "original source" under the language of the FCA in effect at the relevant time, the Court will grant defendant's motion to dismiss for lack of subject matter jurisdiction.

### BACKGROUND

In 1995, the District awarded a contract to Health Management Systems ("HMS") to design and implement a Medicaid Reimbursement Recovery Program for the DCPS Special

Education Program.  Am. Compl. [Docket Entry 82] ¶ 10.  Plaintiff's firm, Davis & Associates

("D&A"), worked as a subcontractor to HMS.  Id. ¶¶ 4, 11.  As a HMS subcontractor, D&A was

responsible for collecting data, maintaining necessary documentation, and preparing Medicaid

reimbursement claims ("cost claims") for the services that DCPS provided to special education

students.  Id. ¶ 11.  At the end of 1998, the District told D&A that the D&A/HMS contract would

not be renewed, and that it had hired Maximus Corporation ("Maximus") to prepare future DCPS

cost claims.  Id. ¶ 12; see also Personal Disclosure Statement of Michael L. Davis ("Personal

Disclosure Statement") at 1.  D&A still prepared the cost claim for fiscal year 1998, totaling

approximately $67 million, which it submitted to DCPS in June 1999.  See Am. Compl. ¶¶ 13-

14; Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mot.") [Docket Entry 88], Ex. A.  D&A

retained all of the documentation needed to substantiate the 1998 cost claim.  Am. Compl. ¶ 14.

Shortly after receiving D&A's cost claim, Donald Rickford, the Chief Financial Officer of

DCPS, told D&A that he would not be forwarding the cost claim to the Medical Assistance

Administration ("MAA") for reimbursement given the "substantial amount of work that remains

to be done on the project."  Def.'s Mot., Ex. B.  According to Rickford, the D&A cost claim did

not "effectively capture outstanding moneys due to DCPS because of the lack of documentation

provided and the methodology used."  Id.  Rather than submit the D&A cost claim to MAA,

DCPS asked Maximus to prepare another cost claim for fiscal year 1998.  Am. Compl. ¶ 15.  In

or around January 2000, DCPS submitted the revised Maximus cost claim -- in the amount of

approximately $11 million -- to MAA.  Id.; see also Pl.'s Opp. to Def.'s Mot. to Dismiss or for

Summ. J. ("Pl.'s Opp.") [Docket Entry 90], Ex. A ("Maximus FY 98 Cost Report").[1]

Medicaid is funded jointly by states and the federal government, and MAA is the state agency that administered the District's Medicaid program at the time relevant to this suit. See Def.'s Mot., Ex. D ("CMS Report") at 3. During this time-period, MAA submitted quarterly reports to the Centers for Medicare and Medicaid Services ("CMS"), the federal agency that oversees all state Medicaid programs. Id. These reports set forth the District's Medicaid expenditures -- including those of DCPS -- as well as the District's claim for the federal portion of Medicaid reimbursement, known as Federal Financial Participation ("FFP"). Id. The services that DCPS provides to special needs children pursuant to Individualized Education Plans fall under the Medicaid coverage category of "clinic services," meaning that DCPS is reimbursed for the cost of these services on an interim basis throughout the year. See id. at 4; see also Def.'s Mot., Ex. C ("District Medicaid State Plan") at 10. However, at the end of each fiscal year, DCPS would submit a cost claim to MAA -- i.e., the Maximus FY 98 Cost Report at issue here -- which would "allow MAA to determine what DCPS's actual costs were for providing the services that were already billed and paid on an interim basis." CMS Report at 4; Am. Compl. ¶ 13.1.

MAA would then work with an auditing firm to review and validate the annual DCPS cost claim so that only allowable costs would be included in the final cost settlement. See CMS

---

[1] Plaintiff argues that "[d]uring the course of discovery, the parties have not been able to determine when the DCPS cost report was submitted to MAA." Pl.'s Opp. at 8. However, there does not appear to be any genuine issue of material fact as to when the Maximus FY 98 Cost Report was submitted. The Report has a date-stamp that reads: "RECEIVED Jan. 12, 2000 Medical Assistance Admin.," see id., Ex. A, and plaintiff has cited no evidence to the contrary, aside from the deposition testimony of one witness, who stated that he "believe[d]" the Report "was submitted around December 1999," id., Ex. E, Whitney Dep. at 24. The Court therefore assumes that the 1998 cost claim was submitted in or around January 2000.

Report at 4; see also District Medicaid State Plan at 11.  Once MAA and its auditors computed DCPS's actual, recoverable costs, MAA would reconcile these costs with the interim payments that had already been made, and refund the federal share of any overpayment to CMS through a credit on the District's quarterly report.  See CMS Report at 4-6; 42 C.F.R. § 433.320; Def.'s Mot., Ex. E ("2002 Audit") at 8 (explaining that "MAA will review or audit the cost report no less than once every two years, determine DCPS' final actual and reasonable costs, and complete the settlement by paying the balance due to DCPS or collecting the amount owed by DCPS").

When D&A learned that DCPS had submitted the Maximus FY 98 Cost Report to MAA, it contacted Rickford to inform him that Maximus lacked the requisite documentation to support the cost claim, since the documentation was still in D&A's possession.  See Am. Compl. ¶ 16; Personal Disclosure Statement at 2.  D&A also told Rickford that the $11 million Maximus cost claim did not reflect the full amount of Medicaid reimbursement owed to DCPS.  Am. Compl. ¶ 16.  According to plaintiff, Rickford and another District official assured D&A that the Maximus cost claim would be corrected and re-submitted by September 2001.  Id. ¶ 17.  However, no corrected cost claim was ever submitted.  Instead, in May 2000, MAA paid DCPS $10,335,893 in FFP funds as a "tentative settlement determination of program reimbursement" for the 1998 fiscal year, and informed DCPS that the payment would be adjusted after MAA's auditor, Bert Smith and Company ("Bert Smith & Co."), had finished reviewing DCPS's cost information for fiscal years 1996 through 1998.  See Pl.'s Opp., Ex. C; see also Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Docket Entry 87], Ex. G (same); Am. Compl. ¶ 20.1.

Bert Smith & Co. did not complete its review of DCPS's 1996-1998 Medicaid cost information until 2001.  See 2002 Audit at ii; see also Pl.'s Mot., Ex. H ("Bert Smith & Co.

Reports") at 2, 16. Because DCPS lacked certain requested information, Bert Smith & Co. was unable to conduct a formal audit, and had to apply somewhat less stringent "agreed-upon review procedures" to evaluate DCPS's cost claims. See CMS Report at 4; see also Bert Smith & Co. Reports at 1-2, 15-16. Ultimately, the Bert Smith & Co. auditors disallowed many of DCPS's costs due to the absence of supporting documentation. See CMS Report at 4; see also Bert Smith & Co. Reports at 7, 10, 13, 19. In 2001, MAA advised the CMS Regional Office of the auditors' finding "that DCPS had included, in their 96-98 cost reports, cost items . . . for which DCPS did not have the required service-specific documentation." CMS Report at 3. The Office of the District of Columbia Auditor also described the District's Medicaid documentation difficulties in an August 2002 report entitled "D.C. Public Schools' Medicaid Revenue Recovery Operations Require Substantial Improvements." See 2002 Audit at ii. As that report explained, "the Medicaid audits for fiscal years 1996 through 1998 . . . revealed that $15 million of costs incurred for services rendered to special education students were disallowed for Medicaid reimbursement due to the absence or unavailability of supporting documentation." Id.

In February 2003, CMS undertook its own onsite financial review of DCPS's cost claims for fiscal years 1996 through 1998. See CMS Report at 1. After conducting that review, CMS determined that in light of DCPS's "incomplete and insufficiently detailed cost information," the auditors had "applied sensible, practical testing and conservative judgements to determine allowable Medicaid costs." Id. at 5. CMS therefore instructed MAA to "finalize the cost settlements proposed by the auditors and refund the Federal share of the overpayments to CMS." Id. at 6. MAA subsequently refunded $7,601,381 in FFP funds to CMS for fiscal year 1998, in accordance with the auditors' recommendation. Id.; see also Am. Compl. ¶ 20.3.

Plaintiff filed this qui tam action against the District and DCPS in April 2006, alleging that DCPS's submission of the Maximus FY 98 Cost Report to MAA without maintaining supporting documentation violates Medicaid cost reimbursement regulations and therefore constitutes a "false claim" under the FCA.[2]  In 2005, prior to filing suit, plaintiff sent letters notifying both the U.S. Department of Health and Human Services and the U.S. Department of Justice of the District's alleged fraud.  See Def.'s Mot., Ex. I.  Plaintiff also complied with FCA procedures requiring qui tam actions to be filed under seal to permit the United States to intervene.  See 31 U.S.C. § 3730(b)(2).  However, in October 2007, the United States declined to intervene and asked that plaintiff be allowed to prosecute the action as a relator.  See Government's Notice of Election to Decline Intervention [Docket Entry 16].  The Court subsequently unsealed the complaint and ordered that it be served on the District and DCPS.

The District and DCPS responded with a motion to dismiss, arguing that (1) the Court lacked subject matter jurisdiction because plaintiff's suit was based upon publicly-disclosed allegations or transactions and plaintiff was not an original source under the FCA; (2) plaintiff

_____

[2]  The month before he filed this suit, plaintiff filed another qui tam action based on his work preparing Medicaid cost claims for the District, in which he alleged that the District had misappropriated approximately $147 million in federal Medicaid reimbursements by depositing the reimbursements in the District's General Fund, rather than using them to pay the D.C. General, as required by law.  See United States ex rel. Davis v. Dist. of Columbia, 1:06-cv-00489-JFM (filed Mar. 15, 2006).  Another judge on this Court dismissed the case for lack of subject matter jurisdiction, and the D.C. Circuit affirmed, holding that plaintiff's claims were based upon a public disclosure and plaintiff did not qualify as an "original source" under the FCA.  Davis, 2011 WL 611814, at *2 (D.C. Cir. Feb. 15, 2011).  On May 24, 2006, plaintiff's company brought yet another suit under 42 U.S.C. §§ 1981 and 1983, alleging that the District's failure to pay for its services violated 42 U.S.C. § 1981 and deprived the company of its property without due process of law.  See Davis & Assocs. v. Dist. of Columbia, 501 F. Supp. 2d 77, 78-81 (D.D.C. 2007).  The court dismissed that complaint for failure to state a claim, on the grounds that the contracts at issue were void ab initio and that plaintiff lacked a valid property interest under the Fifth Amendment.  Id. at 80-82.

failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b); (3) plaintiff failed to state a claim for treble damages; (4) plaintiff failed to state a claim for conspiracy under 31 U.S.C. § 3729(a)(3); (5) the fiscal year 1998 cost claim was not "false"; and (6) DCPS is not a suable entity. See Defs.' Mot. to Dismiss [Docket Entry 23]; Defs.' Reply [Docket Entry 27]. The Court granted in part and denied in part the motion to dismiss. See United States ex rel. Davis v. Dist. of Columbia, 591 F. Supp. 2d 30, 33 (D.D.C. 2008). With respect to subject matter jurisdiction, the Court concluded that plaintiff's claims were based upon a public disclosure (namely, the August 2002 audit report), but that plaintiff was an original source under the FCA, thereby providing the Court with jurisdiction. Id. at 35-37. The Court also concluded that plaintiff had satisfied the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b), but dismissed plaintiff's conspiracy claim under 31 U.S.C. § 3729(a)(3). Id. at 37-38, 40. The Court dismissed plaintiff's claim for treble damages on the ground that plaintiff had failed to allege that the Government suffered any damages as a result of the District's fraud. Id. at 37-40. Finally, the Court granted plaintiff's request to dismiss DCPS as a defendant. Id. at 40.

        Since this Court's 2008 decision, the parties have completed discovery and plaintiff has filed an amended complaint, providing additional details as to DCPS's allegedly fraudulent submission of the Maximus FY 98 Cost Report to MAA. See, e.g., Am. Compl. ¶¶ 20.1-20.3. In his amended complaint, plaintiff asserts that DCPS's submission of the 1998 cost claim without supporting documentation violates 31 U.S.C. § 3729(a)(1) (prohibiting the knowing presentation of a false or fraudulent claim for payment); § 3729(a)(2) (prohibiting the knowing use of a false record or statement material to a false or fraudulent claim); and § 3729(a)(3) (prohibiting

conspiracy to violate the FCA).[3] Id. ¶¶ 28-42. Plaintiff also renews his request for treble

damages, arguing that CMS's eventual recoupment of FFP funds from the DCPS fiscal year 1998

cost claim shows that the federal government did, in fact, sustain actual damages as a result of

the District's fraud. See id., Prayer at p. 9; see also Pl.'s Mot. at 11-13. Now before the Court are

plaintiff's motion for summary judgment, and defendant's motion to dismiss for lack of subject

matter jurisdiction or, in the alternative, for summary judgment. In its motion, defendant

reiterates its prior argument that the Court lacks subject matter jurisdiction because this suit is

based upon a public disclosure and plaintiff is not an original source. Defendant also argues that

summary judgment is warranted because (1) plaintiff has not shown that the District ever

presented a false claim to the federal government (as opposed to MAA, which is a District

agency); (2) the Maximus FY 98 Cost Report was not false; (3) the District lacked the requisite

scienter needed to establish an FCA violation; and (4) plaintiff's claims are barred by the FCA's

statute of limitations.

### STANDARD OF REVIEW

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court --

plaintiff here -- bears the burden of establishing that the court has jurisdiction to hear his claims.

See U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing Steel

Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998)); see also Grand Lodge of Fraternal

Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion

---

[3] The 2009 amendments to the FCA changed the language and numbering of the relevant
provisions of 31 U.S.C. § 3729(a). See Pub. L. 111-21, 123 Stat. 1621 § 4(a)(1) (May 20, 2009).
However, plaintiff's amended complaint (filed in February 2010) asserts the same three claims set
forth in his initial complaint (filed in April 2006). Hence, plaintiff's claims arise under the
version of the Act in effect at the time his initial complaint was filed.

imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), a plaintiff's "'factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)). At the stage of litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, so long as it accepts the factual allegations in the complaint as true. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3; Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

## DISCUSSION

Defendant's first argument -- that plaintiff's claims must be dismissed under Fed. R. Civ. P. 12(b)(1) because this suit is based upon a public disclosure and plaintiff is not an original source -- was previously rejected by this Court. See Davis, 591 F. Supp. 2d at 35-37. Nevertheless, "motions challenging subject matter jurisdiction may be made or renewed until judgment is entered," United States ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F.

Supp. 2d 25, 41 (D.D.C. 2007), and this Court's initial denial of dismissal for lack of subject matter jurisdiction was not a final judgment. See Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting Fed. R. Civ. P. 54(b)) (explaining that "'any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities'" (ellipsis in original)). Hence, the Court is free to reconsider its earlier conclusion with respect to the effect of the FCA's public disclosure bar on this case. Moreover, because "[a] *qui tam* relator's qualification to proceed is an issue of subject matter jurisdiction," United States ex rel. McBride v. Halliburton Co., 2007 WL 1954441, at *3 n.4 (D.D.C. July 5, 2007); see also Rockwell Int'l Corp. v. United States, 549 U.S. 457, 467-68 (2007), the Court will address this argument prior to examining the parties' asserted bases for summary judgment. See Vt. Agency of Nat'l Resources v. United States ex rel. Stevens, 529 U.S. 765, 778 (2000) (explaining that "[q]uestions of jurisdiction, of course, should be given priority - since if there is no jurisdiction there is no authority to sit in judgment of anything else").

## I.      The FCA's Public Disclosure Bar

The FCA prohibits persons from presenting false or fraudulent claims for payment to the federal government, 31 U.S.C. § 3729(a), and permits civil actions alleging such fraud to be filed either by the Attorney General, § 3730(a), or by private persons acting in the Government's name, § 3730(b)(1) (i.e., "relators"). The FCA establishes financial incentives for private persons to pursue so-called qui tam actions,[4] by allowing those who bring successful FCA claims to retain a

---

[4]  Qui tam is short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, meaning "who pursues this action on our Lord the King's behalf as well as his own." See Rockwell, 549 U.S. at 463 n.2.

percentage of the Government's recovery.  See United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 649 (D.C. Cir. 1994); see also 31 U.S.C. § 3730(d)(1)-(2).

However, the circumstances under which private persons may bring qui tam suits are limited by § 3730(e)(4)(A) of the FCA, which in 2006 provided that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.[5]

In other words, a qui tam relator could not bring an action in 2006 based upon allegations or transactions that had already been publicly disclosed via certain specified channels unless the relator qualified as an "original source of the information."  An "original source" is defined by statute as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  Id. § 3730(e)(4)(B).  The D.C. Circuit has held that a relator must also "provide the information to the government prior to any public disclosure" in order to qualify as an "original source."  See United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 690 (D.C. Cir. 1997).

The FCA's public disclosure bar reflects Congress's recognition that "[o]nce the

---

[5]  Since plaintiff filed this suit in April 2006, the language of 31 U.S.C. § 3730(e)(4)(A)-(B) has been modified in a number of significant respects.  See Pub. L. 111-148, 124 Stat. 119 § 10104(j)(2) (Mar. 23, 2010).  However, the Supreme Court has held that these changes do not apply retroactively.  See Graham Cnty. v. Soil and Water Conservation Dist. v. United States ex rel. Wilson, --- U.S. ----, 130 S. Ct. 1396, 1400 n.1 (2010).  Hence, the Court will apply the version of 31 U.S.C. § 3730(e)(4) that was in effect at the time plaintiff's complaint was filed. For convenience, the Court will also generally use the present tense in referring to the statute as it existed in April 2006.

information is in the public domain, there is less need for a financial incentive to spur individuals into exposing frauds." Findley, 105 F.3d at 685.  Although qui tam plaintiffs can serve a useful function in helping the Government detect fraud, the FCA's qui tam provision was historically subject to abuse by those seeking to profit from previously-publicized instances of fraud -- the paradigmatic example being "the notorious plaintiff who copied the information on which his *qui tam* suit was based from the government's own criminal indictment." Springfield Terminal, 14 F.3d at 649 (citing United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943)).  Hence, in 1986, Congress enacted the version of § 3730(e)(4) at issue here, in an effort to achieve "the golden mean" between "adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." Springfield Terminal, 14 F.3d at 649; see also Graham Cnty., 130 S. Ct. at 1407 (noting that the FCA's public disclosure bar reflects Congress's attempt "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits").

Under § 3730(e)(4), this Court's jurisdictional analysis must proceed in two parts.  First, the Court must ask whether plaintiff's qui tam action is "based upon" allegations or transactions that have been publicly disclosed "in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." Id. § 3730(e)(4)(A).  "If - and only if - the answer to the first question is affirmative . . . will the court then proceed to the 'original source' inquiry," under which it asks (1) "whether the *qui tam* plaintiff 'has direct and independent knowledge of the information on which the allegations are based,'" Springfield Terminal, 14 F.3d at 651 (internal citations omitted), and (2) whether the plaintiff disclosed the information upon which his

allegations are based to the Government prior to filing suit, and prior to any public disclosure, see Findley, 105 F.3d at 690-91; see also Rockwell, 549 U.S. at 470-71.

## II.     The Alleged Public Disclosure

Defendant argues that a report issued by the Office of the District of Columbia Auditor in August 2002 constitutes a public disclosure of the precise "allegations or transactions" upon which plaintiff's suit is based.[6]  The report, entitled "D.C. Public Schools' Medicaid Revenue Recovery Operations Require Substantial Improvements," summarizes an audit of the DCPS Medicaid Recovery Unit for fiscal years 2001 and 2002.  See 2002 Audit at i.  Although the report does not focus on the 1998 fiscal year at issue in this case, the second page of the report specifically references DCPS's lack of supporting documentation for the 1996-1998 Medicaid cost claims.  As the report explains, "the Medicaid audits for fiscal years 1996 through 1998 . . . which were finalized in fiscal year 2001, revealed that $15 million of costs incurred for services rendered to special education students were disallowed for Medicaid reimbursement due to the absence or unavailability of supporting documentation."  Id. at ii (emphasis added).  The District maintains that this statement represents a public disclosure of the exact "allegations or transactions" upon which plaintiff's FCA claims are based.  See Def.'s Mot. at 10-14.

It is clear that an audit report prepared by a District agency qualifies as an "administrative report" within the meaning of § 3730(e)(4)(A), and thus falls within the "categories of

---

[6]  The August 2002 audit report is not the only alleged public disclosure cited by the District.  See Def.'s Mot. at 11 n.3.  However, the District characterizes the report as "the most direct, detailed disclosure of the lack of documentation to support Medicaid reimbursement at DCPS for the fiscal year 1998 cost report."  Id.  Because the Court finds that plaintiff's claims are, in fact, based upon the publicly-disclosed transaction in the 2002 audit report, there is no need to examine the other alleged public disclosures relied on by the District.

jurisdiction-stripping disclosures" that are capable of triggering the FCA's public disclosure bar.

See Graham Cnty., 130 S. Ct. at 1400-01 (holding that "the reference to 'administrative' reports" in § 3730(e)(4)(A) "encompasses disclosures made in state and local sources as well as federal sources").[7]  The only question, then, is whether plaintiff's claims are "based upon" the publicly-disclosed "allegations or transactions" contained in the August 2002 audit report.

A relator's complaint is "based upon" a public disclosure when it describes "allegations or transactions substantially similar to those in the public domain, regardless of the actual source for the information in the particular complaint."  Findley, 105 F.3d at 682.  In other words, even if the relator himself did not learn about the fraud from the public disclosure, his claims will still be subject to the public disclosure bar if the relator merely "repeats what the public already knows." Id. at 683; see also Hockett, 498 F. Supp. 2d at 47 (explaining that a relator's lawsuit is "'based upon' a public disclosure if it is 'supported by' or 'substantially similar' to the allegations or transactions contained in the disclosure; it does not need to actually be 'derived from' the public disclosure"); McBride, 2007 WL 1954441, at *3 n.6 (finding that relators' claims were "based upon" publicly-disclosed allegations, even though the relators had "independent pre-disclosure knowledge of the alleged fraudulent practices").  As long as there is sufficient information in the public domain to permit the United States "'adequately to investigate the case and to make a decision whether to prosecute,'" the public disclosure bar is triggered, and the relator will only be

_____

[7]  In the 2010 amendments to the Act, Congress changed the language of 31 U.S.C. § 3730(e)(4)(A), and made clear that only federal reports, hearings, audits, or investigations can trigger the public disclosure bar.  See Pub. L. 111-148, 124 Stat. 119 § 10104(j)(2) (Mar. 23, 2010); see also 31 U.S.C. § 3730(e)(4)(A)(ii).  However, as previously explained, the 2010 amendments to the FCA do not apply retroactively.  See Graham Cnty., 130 S. Ct. at 1400 n.1. Because plaintiff's suit was filed in April 2006, Graham Cnty.'s interpretation of the pre-2010 version of 31 U.S.C. § 3730(e)(4)(A) governs this case.

allowed to proceed if he is an "original source."  Springfield Terminal, 14 F.3d at 653-54

(quoting United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1377 (D.C. Cir. 1981)).

The D.C. Circuit in Springfield Terminal illustrated these principles through the use of an

algebraic formula:

> [I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential
> elements.  In order to disclose the fraudulent *transaction* publicly, the combination of X
> and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion
> that fraud has been committed.

Springfield Terminal, 14 F.3d at 654 (emphasis in original).  Under this framework, jurisdiction

is lacking when either "the allegation of fraud" (i.e., Z) or "the critical elements of the fraudulent

transactions themselves" (i.e., X and Y) have already been made public via one of the avenues

specified in § 3730(e)(4)(A).  Id.  Where that is the case, "there is little need for *qui tam* actions,

which tend to be suits that the government presumably has chosen not to pursue or which might

decrease the government's recovery in suits it has chosen to pursue."  Id.

Here, the August 2002 audit report revealed the essence of plaintiff's fraud claim -- that

the fiscal year 1998 cost claim submitted by DCPS lacked supporting documentation.  See 2002

Audit at ii.  Plaintiff nonetheless seeks to avoid application of the public disclosure bar by

arguing that the 2002 audit report only disclosed DCPS's lack of "cost documentation" and not its

lack of so-called "service documentation."  According to plaintiff, the Bert Smith & Co. auditors

only reviewed DCPS's cost documentation for the fiscal year 1998 cost claim -- that is, the

documentation showing the Medicaid-eligible costs that DCPS incurred -- and never examined

DCPS's service documentation, meaning the "appropriate medical records or progress notes that

were completed by the actual service providers for each billed service."  CMS Report at 5; see

<u>also</u> Pl.'s Mot. at 5; Pl.'s Opp. at 2.  Hence, plaintiff claims, when the 2002 audit report mentions that costs were disallowed by the auditors "due to the absence or unavailability of supporting documentation," it can only be referring to the absence or unavailability of <u>cost</u> documentation, since that is the sole form of documentation that the auditors reviewed.  Plaintiff therefore argues that the 2002 audit report does not publicly disclose his allegation that DCPS submitted the 1998 cost claim without maintaining appropriate <u>service</u> documentation.  <u>See</u> Pl.'s Opp. at 2.

Plaintiff's argument is unpersuasive.  To begin with, plaintiff's allegations, as set forth in his complaint, do not distinguish between "cost documentation" and "service documentation"; rather, plaintiff claims that the District violated the FCA by submitting the Maximus FY 98 Cost Report to MAA without maintaining <u>any</u> supporting documentation.  <u>See</u> Am. Compl. ¶¶ 14-16; 30-31.  Even assuming that plaintiff now bases his FCA claims solely on a lack of service documentation, the 2002 audit report's reference to "supporting documentation" encompasses such service documentation.  In the sentence after it describes the "absence or unavailability of supporting documentation" for the DCPS 1996-1998 fiscal year cost claims, the 2002 audit report goes on to state that "[i]f documentation of <u>services</u> and recordkeeping are not immediately improved, these deficiencies will continue to have an adverse impact upon DCPS' finances in future years."  2002 Audit at ii (emphasis added).  Contrary to plaintiff's assertion, then, the 2002 audit report does directly address DCPS's lack of service-specific documentation.

Moreover, plaintiff misunderstands the nature of the allegations or transactions that must be publicly disclosed in order to invoke the FCA's jurisdictional bar.  As the D.C. Circuit has explained, a public disclosure need not be a "'mirror image of [the information] in the hands of the <i>qui tam</i> plaintiff'"; rather, it is sufficient if the publicly-disclosed allegations or transactions

"'could have formed the basis for a governmental decision on prosecution, or could at least have alerted law enforcement authorities to the likelihood of wrongdoing.'" <u>Springfield Terminal</u>, 14 F.3d at 654 (quoting <u>Joseph</u>, 642 F.2d at 1377). Here, the 2002 audit report's statement that the DCPS fiscal year 1996-1998 cost claims lacked "supporting documentation" was more than sufficient to alert law enforcement authorities to the alleged wrongdoing that forms the basis of plaintiff's suit. And where the "general practice has already been publicly disclosed," a relator may not evade the public disclosure bar simply by providing "more specific details about what happened," <u>United States ex rel. Settlemire v. Dist. of Columbia</u>, 198 F.3d 913, 919 (D.C. Cir. 1999), or by "coming forward with additional evidence incriminating the defendant," <u>Springfield Terminal</u>, 14 F.3d at 655. Hence, even if plaintiff possesses additional details as to the specific <u>types</u> of documentation that DCPS lacked for its fiscal year 1998 cost claim, plaintiff's claims are still "based upon" the allegedly fraudulent transaction disclosed in the 2002 audit report -- <u>i.e.</u>, DCPS's submission of the 1998 cost claim without adequate supporting documentation. Accordingly, this suit can proceed only if plaintiff is an original source under the FCA.

### III.  <u>Findley</u> and the Original Source Requirement

In order to qualify as an "original source" under the language of the FCA in effect when plaintiff filed suit in 2006, a <u>qui tam</u> plaintiff must (1) possess "direct and independent knowledge" of the information on which his allegations are based; and (2) voluntarily provide that information to the Government prior to filing suit. <u>See</u> 31 U.S.C. § 3730(e)(4)(B); <u>see also</u> <u>Rockwell</u>, 549 U.S. at 470-71. Knowledge is considered "direct" if it is "first-hand knowledge," <u>Findley</u>, 105 F.3d at 690, acquired through the relator's own efforts, rather than from an "intervening agency," <u>Springfield Terminal</u>, 14 F.3d at 656 (internal quotation marks and citation

omitted).  Knowledge is considered "independent" if it does not "depend or rely on the public

disclosures."  Findley, 105 F.3d at 690 (citing Springfield Terminal, 14 F.3d at 657).  Although a

relator's knowledge must be both direct and independent, a relator need not have direct and

independent knowledge of "*all* of the vital ingredients to a fraudulent *transaction*"; rather, it is

sufficient if the relator has "direct and independent knowledge of *any* essential element of the

underlying fraud transaction" (i.e., if the relator has direct and independent knowledge of either

X or Y, to use the Springfield Terminal terminology).  See Springfield Terminal, 14 F.3d at 656-

57 (emphasis in original).

 As this Court explained in its 2008 Memorandum Opinion, plaintiff has direct and

independent knowledge of at least one essential element of his claim: that DCPS did not possess

supporting documentation for the fiscal year 1998 cost claim.  See Davis, 591 F. Supp. 2d at 37.

This knowledge is direct and independent because plaintiff's firm, D&A, retained the supporting

documentation for the fiscal year 1998 cost claim, and never provided it to Maximus or DCPS.

See Am. Compl. ¶¶ 4, 19.  Plaintiff therefore had first-hand knowledge that DCPS lacked this

documentation, and plaintiff did not derive this knowledge from any public disclosure.  Plaintiff

also satisfies the second statutory requirement needed to qualify as an original source, as he

voluntary disclosed the information to the Government prior to filing suit.  In 2005, plaintiff

wrote letters to both the U.S. Department of Health and Human Services and the U.S.

Department of Justice, notifying them of the District's alleged fraud.  See Def.'s Mot., Ex. I.

 But the D.C. Circuit in Findley imposed an additional requirement on would-be "original

sources" -- and it is this requirement that the Court's prior Memorandum Opinion failed to

address, and which ultimately proves fatal to plaintiff's claims.  In Findley, the D.C. Circuit held

that a relator must "provide the government with the information prior to any public disclosure" in order to fall within the "original source" exception to the public disclosure bar. <u>Findley</u>, 105 F.3d at 691 (emphasis added). Without such a requirement, the court in <u>Findley</u> explained, the "government notice part of the 'original source' exception" would be superfluous, since other provisions of the FCA (<u>i.e.</u>, those requiring complaints to be filed under seal for sixty days and served only on the Government) already ensure that the Government receives advance notice of <u>qui tam</u> actions. <u>Id.</u> at 690. The court in <u>Findley</u> thus construed the "government notice" provision of § 3730(e)(4)(B) to require not only that an "original source" provide the Government with the information prior to filing suit, but also prior to any public disclosure. <u>Id.</u> at 691. Such an interpretation is consistent with the purpose of the public disclosure bar, the court noted, because "there is little need for the incentive provided by a *qui tam* action . . . [o]nce the information has been publicly disclosed." <u>Id.</u>; <u>see also</u> <u>United States ex rel. McKenzie v. BellSouth Telecomm'cns., Inc.</u>, 123 F.3d 935, 942-43 (6th Cir. 1997) (quoting <u>United States ex rel. Dick v. Long Island Lighting Co.</u>, 912 F.2d 13, 18 (2d Cir. 1990) (adopting <u>Findley</u>'s interpretation of § 3730(e)(4)(B), and explaining that this approach, which bars "'those who come forward only after public disclosure of possible False Claims Act violations from acting as qui tam plaintiffs, . . . discourages persons with relevant information from remaining silent'")).

Several circuits, however, have disagreed with <u>Findley</u>'s interpretation of § 3730(e)(4)(B), and have not required that a <u>qui tam</u> plaintiff's voluntary disclosure of information to the Government occur prior to any public disclosure. <u>See, e.g.</u>, <u>United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.</u>, 579 F.3d 13, 22-24 (1st Cir. 2009); <u>United States v. Johnson Controls, Inc.</u>, 457 F.3d 1009, 1014 (9th Cir. 2006); <u>Minn. Ass'n of Nurse Anesthetists v. Allina</u>

Health Sys. Corp., 276 F.3d 1032, 1050-51 (8th Cir. 2002).  Indeed, the D.C. Circuit itself has

recently expressed some uncertainty as to the continuing validity of the "implicit requirement" it

identified in Findley, in light of the Supreme Court's 2007 decision in Rockwell.  See Davis,

2011 WL 611814, at *2.[8]

Nevertheless, neither the Supreme Court nor the D.C. Circuit has purported to overrule

Findley's pre-public disclosure notification requirement, and this Court will not "lightly infer an

abrogation of settled precedent."  McBride, 2007 WL 1954441, at *7 n.16.  Because Findley

remains good law, then, this Court is bound to follow it.  Hence, plaintiff's FCA claims can only

survive if he provided notice to the federal government of the information upon which his

allegations are based prior to the 2002 audit report.  Here, however, plaintiff did not notify the

Government of the District's alleged fraud until 2005 -- three years after the audit report had

already publicly disclosed that DCPS lacked supporting documentation for the fiscal year 1996-

1998 Medicaid cost claims.  See Def.'s Mot., Ex. I; see also 2002 Audit Report at ii.  Under

Findley, then, plaintiff does not qualify as an "original source," and his FCA claims are therefore

---

[8]  The Court in Rockwell examined the meaning of the term "information" as used in §
3730(e)(4)(B), and held that the statute's requirement that a relator have "direct and independent
knowledge of the information on which the allegations are based" refers to "the information on
which the *relator's allegations* are based," as opposed to "the information on which the *publicly
disclosed allegations* that triggered the public disclosure bar are based."  579 U.S. at 470
(emphasis in original).  In so holding, the Court overruled the interpretation of "information"
endorsed by the D.C. Circuit in Findley.  See Findley, 105 F.3d at 690 (explaining that a relator
must have direct and independent knowledge "of the information on which the publicly disclosed
allegations are based").  Rockwell did not deal directly with Findley's pre-public disclosure
notification requirement, but "[t]o the extent that *Findley's* misreading of the term 'information'
informs its holding that the relator must provide the information prior to the public disclosures,
that holding may be undercut by *Rockwell*."  McBride, 2007 WL 1954441, at *7 n.16.

barred by the version of § 3730(e)(4)(A) that existed when he filed this action in 2006.[9]

Because the Court finds that it lacks subject matter jurisdiction over plaintiff's claims, it will not

address either party's asserted bases for summary judgment.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter

jurisdiction is granted.  A separate order has been posted on this date.


_____
/s/
JOHN D. BATES
United States District Judge


Dated: March 29, 2011

---

[9]  Under the version of the FCA now in effect, an "original source" is defined as "an individual who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."  31 U.S.C. § 3730(e)(4)(B) (emphasis added).  In other words, the current version of 31 U.S.C. § 3730(e)(4)(B) allows a relator to proceed if he either meets the Findley pre-public disclosure notification requirement, or if he possesses knowledge independent of the public disclosure that materially adds to the public disclosure, and he provides the information to the Government prior to filing suit.